EDGAR S. RICE, ET UX. *v.* MILLARD M. RICE, ET AL.

[No. 11, January Term, 1945.]

*Decided February 28, 1945.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*D. Lindley Sloan,* with whom was *Edward J. Ryan,* appeared on the brief, for the appellants.

*Thomas Lohr Richards* appeared on the brief for the appellees.

GRASON, J., delivered the opinion of the Court.

In 1922 Millard M. Rice and Sallie B. Rice, his wife (referred to herein as parents), acquired title, as tenants by the entireties, to a farm containing about two hundred and fifty acres of land, improved by a brick dwelling house, barn and other buildings, located in Allegany County, Maryland. The wife died September 7, 1943. Edgar S. Rice (referred to herein as the son) is the husband of Odell H. Rice. A few years after acquiring the property the parents mortgaged it to the Federal Land Bank of Baltimore and in September, 1942, the bank instituted foreclosure proceedings and advertised the property for sale. The son at that time loaned the parents $1,001.12, which was paid to the bank. This payment satisfied all installments then due on the mortgage, but did not satisfy it in full, and the foreclosure suit was dismissed. On September 16, 1942, the son en-

tered a judgment in the Circuit Court for Allegany County, against the parents, for $1,001.12, being the amount loaned by him to them to prevent the foreclosure of the mortgage by the bank.

In the spring of 1943 the parents were indebted to a number of creditors, in addition to the mortgage debt, and it was apparent they could not meet these debts and the payments on the mortgage as they matured. This was the situation when the oral agreement, as alleged by appellee, was entered into between the parents and the appellants. The bill, in substance, avers that the parents would convey to the appellants, by deed, the legal title to the farm, upon the condition that they would hold title to same as security for money advanced to the parents by appellants on account of the farm and for the benefit and account of the parents, as well as security for the judgment held by the son against the parents hereinbefore referred to; that the title to the farm would be held by appellants in trust for the purpose mentioned; that effort would be made to sell the farm and if sold at a reasonable price appellants would convey title to the farm to the purchaser of the property, reimburse themselves for all money due them, including the judgment referred to, and the balance of the purchase money, after satisfaction of all proper liens, would be paid to the parents or the survivor of them. In accordance with this verbal agreement, the deed conveying the farm from the parents to the son and his wife, absolute on its face, was executed. It is exhibited with the bill.

The appellee secured an offer of $9,500 for the farm, from Windish and wife, and called upon appellants to deed the farm to them, deduct from the purchase price all money due appellants, pay all liens, and the balance remaining pay to appellee, the surviving parent. The appellants refused to convey the farm, and appellee filed his bill of complaint in this case, alleging substantially, the matters hereinbefore set out; and, among other things, prayed the Court to declare the deed referred to, to be impressed with a trust in accordance with the agree-

ment alleged in the bill. The appellants answered the bill, denied its allegations, and set up that the deed of the farm by the parents to them is an unqualified deed and that they made full payment for the farm. The appellants also filed a demurrer to the bill on the general ground that it is "defective in law and equity and sets forth no cause of action which would entitle the complainant to relief."

David T. Tharp petitioned the Court to intervene as a party plaintiff, alleging that he is a judgment creditor of appellee; that appellee is insolvent, and is the real owner of the farm in question; that the conveyance of the farm herein referred to was made to hinder, delay and defraud the creditors of appellee from collecting their just claims. He prayed that the deed in question be declared null and void, that the farm be sold, and for other relief. He also prayed to be made party plaintiff in this case and that other creditors of appellee be granted leave to file their claims and join in the case as parties plaintiff. Upon this petition the Court passed an order granting leave to petitioner to intervene as a party plaintiff in this case, and this order grants leave to all other creditors of appellee to file their claims in this cause and intervene as parties in interest. In this connection appellee, in his testimony, said he made no objection to his creditors filing their claims and being paid out of the proceeds of the sale.

Testimony was taken in open court, counsel heard, the cause submitted, and on the 20th day of June, 1944, the Court filed its decree. It is in part as follows:

1. That the demurrer filed by appellants be overruled;

2. That the deed in question "is a trust deed only and not an absolute conveyance, said trust deed conveying the property therein described in trust for the purposes mentioned in the Court's opinion filed herein";

3. That "Thomas Lohr Richards and Edward J. Ryan are hereby appointed trustees of said property and are directed, as such trustees, to convey by deed all the right,

title and interest, both in law and in Equity, of all the parties to this cause, and all persons and corporations having legal claims or liens in and to the said property to Albert E. Windish and Christine A. L. Windish, his wife, in fee simple, and upon delivery of the said deed as aforesaid the said grantees * * * are directed to pay into this Court the sum of ninety-four hundred dollars ($9,400.00), the same being the unpaid balance of the total purchase price of ninety-five hundred dollars ($9,500.00) * * * and the Court auditor is hereby ordered and directed to state an audit showing the proper distribution of the balance of the purchase money of $9,400.00 among those legally entitled to the same, state and county taxes being adjusted as of the date of the delivery of the deed, * * * and the Court auditor shall report his findings to this Court for further order."

It is from the decree that the appeal in this case was taken.

Several witnesses testified in the case but only three of them knew anything concerning the negotiations leading up to the execution of the deed in question. These witnesses are Millard M. Rice, appellee, William E. McDonald, and Edgar S. Rice, one of the appellants. As the testimony of these three witnesses forms the basis for our conclusion, it will not be necessary to refer to the evidence of the other witnesses.

Mr. Rice testified that he and his wife, now deceased, were about the same age and that he was then seventy-eights years old. In September, 1942, the bank was about to foreclose its mortgage and the son advanced him the money needed to stop the foreclosure, for which judgment was afterwards entered and is still due and owing by him. He had been farming this place since 1918, until about two years ago, when he ceased to farm, but he continued to live on the place and now lives there. He testified to various payments that his son made for his account and to various debts that he owed to others, some of which were secured by judgment. Concerning the deed to the farm he said: "We turned the property over

to our son, Edgar S. Rice, on conditions that he would * * * hold it until we could get a buyer for it. His mother and I had picked out where she wanted to live. * * * We did it (meaning executed the deed in question) to carry ourselves over until we could find a buyer for the place so we could pay up what we owed and get a little place where her and I could live. He (meaning his son Edgar) agreed to sell it when we could get a buyer; that was the understanding." When asked what Edgar agreed to do, if he would convey the property to him, he answered: "Well, he agreed to sell it when we would get a buyer and he was to get his money out of it that he spent on it." He was then asked who was to get the rest of the money and he answered "I was to get it." He further testified: "We deeded it to him in order that he could help us along until we could find a buyer for it. I didn't have any money and my wife was down there sick the most of the time. We deeded it to him in order to carry us over until we could find a buyer for it. We wanted to sell it. I found a buyer for it in the fall of 1943 and when I did find a buyer for it, he refused to deed it over to the man that wanted to buy it. He didn't give any good reason at all for not signing the deed. The last reason he gave was that he would take his money out of it and what was left should be put in trust for me to live on the income of it. I objected to that." He testified his wife was sick many years and died in September, 1943, and that Mr. William McDonald made the arrangements about the deed to Edgar.

William E. McDonald testified that he had known both parties between thirty and thirty-five years and was close to both of them. When the farm was advertised for foreclosure he talked to both the father and son and suggested that the son help the father out and stop the sale. Afterwards he told Millard Rice "that the property would be advertised again because he was very certain that he would not have the money to make the payments" and told him the thing to do was to transfer it to Edgar. The witness saw Edgar and told him that

he had said to his father: "As I saw the matter, unless he would be willing to let his father transfer the property to him until such time as it was sold and then he would get his money back and his father would get the equity part of the sale price." He testified: "Edgar told me that he would transfer the property to the purchaser; and when it was transferred to him, when he and his father and I were together, it was the thorough understanding between Mr. Rice and his son that it was just a transfer until such time as the farm was sold. Edgar said that he would transfer the property to the purchaser whenever it was sold. That he would get the money he had put in the property in payments and he would get his interest and his father would get the balance." The witness further testified: "Edgar Rice gave him the deed and asked him to have it recorded, which he did. Edgar told him in his own house that he did not want the farm; that his wife would not live on a farm; that when the farm was sold, all he wanted was his own money. He told him this the night he gave him the deed for record. He agreed that his father should get the balance after he was reimbursed. He didn't claim to own the farm outright." Witness further testified: "Edgar Rice is the one that told him of this sale to Windish. * * * He didn't exactly say then that he wouldn't transfer the property to the purchaser, but he didn't like it because his father had sold it because he had ordered lime and some stuff to farm with." Edgar Rice told the witness: "That he would transfer, that is he would transfer the deed under certain conditions if Mr. Rice would turn all the money over to him as guardian or trustee or put it in the bank in trust."

Edgar S. Rice testified: "He (meaning his father) didn't have any money whatever, and I told him to forget about my thousand dollars; that I would maintain a home for him and he said he didn't want to leave there and my mother didn't want to leave there, (meaning the farm) and he thought I should take the place over and he says if you will take it over and pay the back debts off, I will

give you the place and that way I will have a home, and he wanted me to go into Mr. Richards and make arrangements. * * * They said they didn't want to leave the farm and wanted me to take it over. * * * There never was any agreement with his father to convey it to anybody."

We do not think the deed in question was made to hinder, delay or defraud creditors of appellee. Appellants were only to hold title until a purchaser could be obtained, who would pay a fair and reasonable price for the farm. A purchaser was secured to buy the farm at a fair price; appellants were to deduct from the purchase money debts due them by appellee, pay liens against the property, and balance remaining to appellee. The purpose of the transaction between the parties was to protect appellee's equity in the property. As we have observed, appellee testified that he agreed that all of his crditors should be paid from the proceeds of the sale. Under these circumstances it cannot be said that the deed in question falls in that class which courts condemn as voluntary, without consideration, and executed for the purpose of hindering, delaying and defrauding creditors. In this connection, the son testified he told his father: "He would better sell and he said at that time there was around $6,800 indebtedness against him. They figured that it would take an additional $600 to pay interest and costs, including taxes." The appellants offered in evidence liens against the property and cash paid out by them, which totaled $7,303.23. This evidence tends to show that the farm was worth more than the debts due by the parents and based on the sale of the farm to Windish and wife for $9,500.00, there would be a balance due appellee of $2,196.77 after payment of debts. There was a paper titled "Statement of Receipts" filed by appellants in the case on April 21, 1944. As this paper constitutes no part of the proof, it cannot be considered.

Aside from any question of confidential relations, which would cast the burden on appellants to prove their version of the matter was true, we are of opinion that

the weight of the evidence establishes the fact that at the time of the execution of the deed in question Edgar S. Rice promised his father if anyone made an offer to buy the farm at a fair price he would convey the farm to such person, deduct all money laid out by him for account of the farm and his parents, satisfy all liens, and pay the balance remaining to the parents or the survivor. Such being established as a fact, it would be inequitable to hold that appellants were the absolute owners of the farm in question. The evidence shows that the parents were aged and the father was too old to perform the arduous work incident to farming. It is a fair assumption that in his business as a farmer he had been going back financially for some time before the deed in question was executed. He hadn't farmed at all for two years. His wife was an invalid. There is evidence in the case that the appellee's health was infirm and that shortly after the death of his wife he was ill. The son was a man of fifty years of age. There can be no question that the parents placed confidence in the son and that a confidential relationship existed between the son and his parents. The evidence shows that he breached that confidence. We hold that the deed in question was impressed with a trust whereby the son and his wife became trustees for the appellee and his wife, to hold the farm in question, and when it was sold at a reasonable price, to deduct from the proceeds of the sale outlays in cash made by them, either for account of the farm or for account of the appellee and his wife personally, satisfy liens, and pay the balance remaining to the parents, or the survivor of them.

This Court recently has had occasion to state the law regarding trusts and confidential relations. *Grimes v. Grimes,* 184 Md. 59, 40 A. 2d 58; *Gaggers v. Gibson,* 180 Md. 609, 26 A. 2d 395; *Levine v. Schofer,* 184 Md. 205, 40 A. 2d 324; *O'Connor v. Estevez,* 182 Md. 541, 35 A. 2d 148. In *Grimes v. Grimes,* supra, this Court said:

"Where, however, the owner conveys property without valuable consideration upon an oral promise of the

grantee to hold it for him or to reconvey it to him, and the grantee at the time of the conveyance stands in a confidential relation to the grantor, a court of equity will not permit the grantee to keep the land and be unjustly enriched, but will compel him to transfer the title to the party equitably entitled to it, even though at the time of the conveyance the grantee intended to fulfill the agreement, and even though it is not shown that he was guilty of fraud or undue influence or any other abuse of his confidential relation in procuring the conveyance."

This deed must fall by reason of the following circumstances:

1st. A confidential relationship existed, and the burden of proof was on the appellants to establish their version of the matter by clear, satisfactory and convincing evidence. In this they have failed.

2nd. The evidence clearly establishes that the deed in question was impressed with a trust.

3rd. That under the evidence it would be inequitable to permit the deed to stand.

*Decree affirmed, with costs to appellees, and case remanded.*