## STATE *v.* GILES AND GILES

[No. 443, September Term, 1964.]

*The Order of Court appears at page 342.*

BARNES, J. dissenting:

After receiving the mandate of the Supreme Court of the United States in this case, dated February 28, 1967, vacating the judgment of this Court reversing the lower court's order awarding the Giles brothers a new trial and remanding the case to us for further proceedings, we ordered a rehearing in the case in regard to the meaning and effect of the mandate and the opinions of the Supreme Court. After the rehearing, this Court on April 5, 1967, passed an order purportedly "in obedience to said mandate and in conformity with the opinion of the Supreme Court" remanding the case to the Circuit Court

for Montgomery County without affirmance or reversal of the order of that court for further proceedings in the case either through amendment of the pleadings, the introduction of additional evidence or otherwise, allegedly as provided in Maryland Rule 871. The order further provided that the "further proceedings to be in conformity with the opinion of the Supreme Court in this cause." It was pointed out in the preliminary statement in the order that only six judges of this Court concurred in the order. I declined to concur in the order and I now state my reasons for declining to concur.

First, it appears to me the majority's disposition of this case upon reargument goes beyond the suggestions contained in "the opinion of the Supreme Court"[1] by Mr. Justice Brennan. That opinion specifically recites:

> "It is not for us to direct what the Maryland courts will do in this case. The Court of Appeals may, for all we know, determine that the additional evidence demonstrates prejudice to the degree necessary under its previously applied standard to warrant a new trial. It may remand for a hearing free of the 'work product' rule. It may reaffirm its judgment of reversal. Al-

---

1. There is no majority opinion of the Supreme Court in this case. The plurality of the Supreme Court is made up of five justices with three separate opinions. Mr. Justice Brennan wrote an opinion in which the Chief Justice and Mr. Justice Douglas concurred. Mr. Justice White wrote a separate opinion in which he indicated that he could not agree with the reasoning in the opinion of Mr. Justice Brennan, but concurred in the vacating of the judgment of this Court and its remand to us for further proceedings on the theory that "it would be helpful to have the Maryland Court of Appeals' views as to whether on this record the petitioners have been afforded a full and fair hearing on this issue." Mr. Justice Fortas concurred in the reversal and remand for further proceedings on an entirely different theory, i.e., that, in his opinion, the Giles brothers had been denied due process of law under the Fourteenth Amendment. Mr. Justice Harlan filed an opinion, in which Black, Clark and Stewart, JJ. joined, indicating that there existed no "tenable constitutional ground on which these convictions could be disturbed" and that our judgment should be affirmed. More justices of the Supreme Court agreed with Mr. Justice Harlan's opinion than with any other.

though relief may ultimately be denied, that the state courts should have the opportunity to decide in the first instance is a course consistent with comity, cf. 28 U.S.C. §2254, and a full and fair hearing in the state courts would make unnecessary further evidentiary proceedings in the federal courts." (Emphasis supplied). (386 U. S. at 81, 87 S. Ct. at 800, 17 L. Ed. 2d at 748.)

This Court, in its order of April 5, 1967, has followed none of the courses Mr. Justice Brennan deemed appropriate, as we have neither affirmed the original order of the trial court granting a new trial, reaffirmed our judgment of reversal nor remanded "for a hearing free of the 'work product' rule." The remand under the order of April 5 is far broader than Mr. Justice Brennan suggests we might have determined.

Secondly, I do not think that Maryland Rule 871 has any application in the posture of the case upon the remand from the Supreme Court.

This rule provides, in relevant part, as follows:

"If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the lower court. Upon remand to the lower court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered; provided, however, that the order entered by this Court in re-

manding said case, and the opinion of this Court on which said order is passed, shall be conclusive as to the points finally decided thereby. In such an order remanding a case, this Court will express the purpose for so remanding and in its opinion filed with said order will determine all questions which may have been properly presented."

A majority of this Court had already *reversed* the order of the trial court and there is nothing in the record of this case as it was originally presented to us which in any way made it appear that the case should be remanded without affirmance or reversal or that the purposes of justice would be advanced by permitting further proceedings in the cause. Indeed neither the State nor the appellees suggested such a result; the State sought reversal of the trial court's order, the appellees sought its affirmance. The concluding provision of Rule 871 is instructive. It provides:

"In such an order remanding a case, this Court will express the purpose for so remanding *and in its opinion filed with said order will determine all questions* which may have been *properly presented."* (Emphasis supplied).

It is clear to me that the only issues "properly presented" to us were those presented by the record in the case. We have already determined all of those issues and rendered our opinion on those issues. *State v. Giles,* 239 Md. 458, 212 A. 2d 101 (1965).

It is well settled that this Court under the Constitution of Maryland has appellate jurisdiction only and that it is beyond the power of the General Assembly to attempt to confer original jurisdiction upon this Court. *State ex rel. Mayor & C. C. of Baltimore v. Rutherford,* 145 Md. 363, 125 Atl. 725 (1922); *Hendrick v. State,* 115 Md. 5552, 81 Atl. 18 (1911); *Sevinskey v. Wagus,* 76 Md. 335, 25 Atl. 468 (1892). See also *Ex Parte O'Neill,* 8 Md. 227 (1855) for a similar ruling under the Constitution of 1851. In deciding the "substantial merits" of the case, this Court is confined to matters in the rec-

ord in the case. *Burke v. Burke,* 204 Md. 637, 106 A. 2d 59 (1954) ; *Rice v. Rice,* 184 Md. 403, 41 A. 2d 371 (1945) ; *Chesapeake Realty Co. v. Patterson,* 138 Md. 244, 113 Atl. 725 (1921). See *Carroccio v. Thorpe,* 222 Md. 38, 158 A. 2d 660 (1960). We may not consider matters of evidence, allegedly "newly discovered," or otherwise, which do not appear in the record in the case. If we did this, we would be exercising the original jurisdiction conferred by the Maryland Constitution on the trial courts of the State and not the appellate jurisdiction which has been conferred upon this Court.[2] We do not have the "power to inspect documents or consider evidence not offered below * * *." *Burke v. Burke, supra,* 204 Md. at 646. See *Gutman v. Safe Deposit & Trust Co. of Baltimore,* 198 Md. 39, 81 A. 2d 207 (1951). It is clear to me that in exercising our power under Rule 871 to remand without affirmance or reversal it must appear *from the record on appeal* that the substantial merits of the case will not be determined by affirming or reversing or that the purposes of justice will be advanced by permitting further proceedings in the cause.

The two police reports mentioned by Mr. Justice Brennan in his opinion are not in the transcript in this case and I find no order of the Supreme Court attempting to make them part of the record on appeal. The Supreme Court received these police reports *after the argument* of the case in the Supreme Court when the State, at the request of the Supreme Court, supplied that Court material considered by the trial judge in imposing sentence.[3] In my opinion, we are not at liberty to consider this

---

**2.** This does not mean, of course, that when a case before us has become moot so that we should decline to exercise our *appellate jurisdiction,* we may not consider facts arising subsequent to the appeal and not in the record properly presented to us justifying a *dismissal of the appeal* for this reason. Maryand Rule 835 a 2 and b (7). This is because the existence of an actual controversy is an essential requisite to appellate jurisdiction. Hammond v. Lancaster, 194 Md. 462, 473, 71 A. 2d 474, 478 (1950); State v. Shields, 49 Md. 301, 305 (1878). The same rule is applicable to the appellate jurisdiction of the Supreme Court of the United States. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461 (1945).

**3.** It may be noted that the sentences in this case were imposed in the original case by Judge Pugh and not by Judge Moorman, who sat in the present post conviction case.

evidence outside the record in this case in reaching our decision and, we should not make this evidence part of the record in this case. The only matters we properly have before us on the remand are, in my opinion, the same matters we had before us on our original consideration of the post conviction case which we have already decided on that record. It is clear to me that we should reaffirm our decision.

The most important issue, however — and the one which gravely disturbs me—is the vacation of our judgment and remand of the case to us by the Supreme Court in the absence of any holding by that Court that any right of the Giles brothers protected by the federal Constitution has been denied them by our decision. As Mr. Justice Harlan aptly observed:

> "This Court, without finding any constitutional flaw in the state proceedings, and indeed expressly recognizing that upon the facts as found by the state courts, petitioners' nondisclosure claim gives rise to no federal question under existing law, now returns the case to the Maryland Court of Appeals for what amounts to nothing more than reconsideration.
>
> "* * * The unusual disposition made of this case by the plurality is bottomed upon materials entirely outside the record before us, furnished to this Court after the case was submitted, under the leverage of inquiries put from the bench during the argument. The materials are two pre-indictment police reports, the Montgomery County Officers' Report and the Supplementary Offense Report. It seems to me entirely improper for this Court to 'retry' state criminal cases in its own courtroom and then to return them for reconsideration in light of materials 'discovered' outside the record during that process. Even apart from that regrettable practice, the remand of this case is the more remarkable because the materials on which the plurality relies are not in any sense newly discovered. The fact is that these police reports have played a significant role throughout the state court proceedings. They were made available to defense counsel at the

original trial stage. They were given to and considered by the trial judge at the time of sentence. And although demanded by the new defense counsel in the post-conviction proceeding, their production was denied under a state procedural rule which apparently was not contested in the state appeal, and which is in no way now questioned by this Court from a federal standpoint. In consequence, the ultimate rationale for the plurality's disposition of the case is itself specious." (386 U. S. at 103-104, 87 S. Ct. at 812, 17 L. Ed. 2d at 761-62).

After a review of the applicable authorities and an indication that, in his opinion, the Maryland rules applied by us in our opinion in this case were correct, Mr. Justice Harlan continued:

"The plurality ultimately seeks to justify its disposition of this case in terms of the rules by which this Court has given recognition to the different roles played under the Constitution by federal and state courts. These efforts are entirely unpersuasive. In essence, the plurality has first brought these police reports into the case through an informal discovery rule of its own creation which flies into the face of an unassailed state rule which excluded the reports, and now has invited the state courts to reconsider the case unrestricted by the local rule and not confined to the 'Constitution's relevant commands.' This scarcely fits the plurality's professed objective to 'minimize federal-state tensions.' And plainly this course finds no support in cases in which the Court has remanded for further consideration in light of a supervening event. Nothing here is remotely analogous to the change in state law that occurred in *Bell v. Maryland,* 378 U. S. 226, or to the intervening judgments of this Court that took place in *Patterson v. Alabama,* 294 U. S. 600, and in *Dorchy v. Kansas,* 264 U. S. 286. What is now done is explicable only on the premise that this Court possesses some sort of supervisory power over state

courts, a premise which of course traverses the most fundamental axioms of our federal system.

\* \* \*

"'The unarticulated basis of today's disposition, and of the disparate reasons which accompany it, is quite evidently nothing more than the Court's uneasiness with these convictions, engendered by post-trial indications of the promiscuity of this unfortunate girl. Unable to discover a constitutional infirmity and unwilling to affirm the convictions, the Court simply returns the case to the Maryland Court of Appeals, in hopes that, despite the plurality's repeated disclaimers, that court will share the Court's discomfort and discover a formula under which these convictions can be reversed. The Court is unable even to agree upon a state law basis with which to explain its remand. I cannot join such a disposition. We on this bench are not free to disturb a state conviction simply for reasons that might be permissible were we sitting on the state court of last resort. Nor are we free to interject our individual sympathies into the administration of state criminal justice. We are instead constrained to remain within the perimeter drawn for this Court by the Constitution.

"'I cannot find a tenable constitutional ground on which these convictions could be disturbed, and would therefore affirm the judgment of the Court of Appeals of Maryland." (386 U. S. at 112-113, 119, 87 S. Ct. at 816-17, 819-20, 17 L. Ed. 2d at 766-67, 770).

I completely agree with these observations by Mr. Justice Harlan, concurred in, as has been indicated, by three other justices of the Supreme Court and thereby having the concurrence of *more* justices than any of the other three opinions in the case.

I am profoundly disturbed with what I believe to be the unwarranted expansion of federal judicial power over the States and their judiciary by construing the due process clause in the Fourteenth Amendment to include many of the limitations of

the first eight amendments to the federal Constitution, and a new interpretation of the equal protection clause in the Fourteenth Amendment. My views in regard to what I believe to be unwarranted extensions of federal judicial power have already been fully expressed by me in prior dissenting and concurring opinions and need not be repeated here. See *Truitt v. Board of Public Works*, 243 Md. 375, 411, 221 A. 2d 370, 392 (1966); *State v. Barger*, 242 Md. 616, 628, 639-44, 220 A. 2d 304, 311, 317-19 (1966); *Montgomery County Council v. Garrott*, 243 Md. 634, 650, 653, 222 A. 2d 164, 172, 176 (1966); *Hughes v. Maryland Committee for Fair Representation*, 241 Md. 471, 491-513, 217 A. 2d 273, 385-98 (1966).

I must vigorously protest against the attempted exercise by the Supreme Court in this case of a supervisory power over the decisions of this or any state court of last resort. At least the prior expansion of federal judicial power has proceeded under a construction of provisions of the federal constitution itself; the present case, as Mr. Justice Harlan points out, does not proceed on that basis. If this new theory is pursued, it will gravely impair the federal system. This new theory obviously should not be encouraged, or acquiesced in, *sub silentio*. I have felt obliged to raise my voice in protest.

It may be added that the Supreme Court in this case may only exercise its appellate jurisdiction conferred by Article III of the federal Constitution and by the Acts of Congress pursuant to Section 2 of Article III. Its original jurisdiction extends *only* to cases involving ambassadors, public ministers and consuls and those in which a State shall be a party. *Ex Parte Vallandigham*, 1 Wall. (68 U. S.) 243, 252 (1864). It has no original jurisdiction even in cases arising in the federal court system, let alone in cases arising in state courts and upon the consideration of decisions of state courts of last resort. The consideration of evidence ouside the record on appeal—and hardly "newly discovered" as pointed out by Mr. Justice Harlan—is not part of the appellate jurisdiction of the Supreme Court of the United States.

I have indicated in a prior opinion, *Truitt v. Board of Public Works, supra,* my suggestion that if the expansion of federal judicial power continued, the Congress may well feel

obliged, in order to preserve the proper balance between the states and the national government, to remedy the situation by appropriate legislation. Congress may restrict the powers of the federal courts generally and the appellate powers of the Supreme Court as it has plenary power to do under Article III, Section 2 of the federal Constitution [4] or limit the enforcement of the Fourteenth Amendment as Congress has the power to do under Section 5 of that amendment. I expressed the hope that the majority of the Supreme Court would return to more orthodox constitutional doctrine and thus avoid corrective action by Congress. Alas, a plurality appears to move toward even more extraordinary areas of federal judicial power as this case indicates.

Our reaffirmance of our decision would not deny the Giles brothers their right to present the "newly discovered" evidence or any other matters they may have in a new proceeding under the Uniform Post Conviction Act. Code, Art. 27, Secs. 645A to 645J.

I would reaffirm our decision, and out of abundant caution, would provide that our reaffirmance was without prejudice to the Giles brothers to file a new post conviction proceeding presenting the police reports or any other evidence or issues their counsel may desire to present. In this way we would preserve the integrity and correctness [5] of our prior decision in this case, the finality of our decision on State issues and, at the same time, permit the Giles brothers to present in a new post conviction proceeding, the evidence and issues they now desire to present. From their viewpoint, the result would be substantially the same but from the constitutional viewpoint this disposition would, in my opinion, be quite different indeed.

---

4. See Ex parte McCardle, 7 Wall. (74 U. S.) 506 (1868) sustaining the Act of March 27, 1868 which took away the appellate jurisdiction of the Supreme Court in habeas corpus cases arising under the Act of 1867. This Act was passed over President Andrew Johnson's veto while the McCardle case was pending in the Supreme Court and after argument on the merits had been held.

5. As Mr. Justice Harlan pointed out: "On the basis of the trial record, it would be difficult to imagine charges more convincingly proved than were those against these three youths for raping this teenage girl."