469 A.2d 1256

**James Harvey McALEAR**

v.

**Anna Joyce McALEAR.**

**No. 138, Sept. Term, 1982.**

Court of Appeals of Maryland.

Jan. 19, 1984.

Bruce A. Kaufman, Baltimore, Timothy P. Kane, Rockville, for appellant.

Thomas L. Beight, Gaithersburg, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

This case presents the question whether a person can be imprisoned for failure to pay a monetary award granted pursuant to Maryland Code (1974, 1980 Repl.Vol., & 1983 Cum.Supp.), §§ 3–6A–05 and 3–6A–08 of the Courts and Judicial Proceedings Article (monetary award). More particularly, it involves the question whether such a monetary award is a form of alimony and, therefore, not a debt within the scope of the Maryland Constitution, Art. III, § 38.

Maryland Constitution, Art. III, § 38, ratified 2 November 1982, provides:

"No person shall be imprisoned for debt, but a *valid decree of a court of competent jurisdiction* or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or *for alimony* (either common law or as defined by statute), shall not constitute a debt within the meaning of this section."[1] (Emphasis added.)

---

1. At the time of the trial court's order in the instant case, Md. Const., Art. III, § 38, ratified 6 November 1962, was applicable. That section provided:

"No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for the support of an illegitimate child or children, or for alimony, shall not constitute a debt within the meaning of this section."

Ch. 321 of the Acts of 1982, ratified 2 November 1982, amended Md. Const., Art. III, § 38, ratified 6 November 1962. The 1982 amendment was necessitated by the General Assembly's enactment of ch. 332 of the Acts of 1975, effective 1 July 1975, which expressly provided that alimony, previously awarded only to a wife, could be

Section 3–6A–05 of the Courts and Judicial Proceedings Article[2] provides in pertinent part:

"(a)(1) In granting an absolute divorce or annulment . . . the court shall determine which property is marital property if the division of property is an issue.

. . . . .

"(b) The court shall determine the value of all marital property. After making the determination, the court *may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.*

. . . . .

"(c) A monetary award made under this section may be reduced to a judgment *to the extent that any part of the award is due and owing."* (Emphasis added.)

Section 3–6A–08[3] provides:

"(a) An order, award, or decree entered under this subtitle *may be enforced in accordance with the Maryland Rules."*[4] (Emphasis added.)

---

awarded to either spouse. It was further necessitated by the General Assembly's enactment of ch. 575 of the Acts of 1980, effective 1 July 1980, for the purpose of "defining, consolidating and establishing the law with respect to alimony. . . ." Ch. 321 of the Acts of 1982 was proposed for the purpose of "eliminating a gender-specific reference" and "clarifying and specifying the meaning of the term 'alimony'. . . ."

**2.** At the time of the trial court's order in the instant case, Md.Code (1974, 1980 Repl.Vol.) § 3–6A–05 of the Courts and Judicial Proceedings Article was applicable. Ch. 294 of the Acts of 1982, effective 1 July 1982, amended § 3–6A–05 without any change relevant here.

**3.** At the time of the trial court's order in the instant case, Md.Code (1974, 1980 Repl.Vol.) § 3–6A–07 of the Courts and Judicial Proceedings Article was applicable. Ch. 159 of the Acts of 1983, effective 1 July 1983, transferred former § 3–6A–07 to be present § 3–6A–08.

**4.** *See* Md.Rule 685—Enforcement of Decree and Order . . . Equity; *See also* Md.Rules 622—Execution; 623—Execution by Attachment; F 1 through F 6—Attachment on Judgment; G 40 through G 61—Attachment on Original Process; P 1 through P 5—Contempt.

On 3 June 1981, the petitioner, James H. McAlear (husband), and the respondent, Anna J. McAlear (wife), were divorced. They had not previously reached an agreement concerning alimony or the disposition of property. The trial court, among other things, awarded the wife alimony in the amount of $700.00 per month "during the joint lives of the parties, or until the [wife] sooner remarries, all subject to further order of the court." The trial court further determined that "post-marital appreciated interest" in two corporations was marital property and that the wife's interest in that marital property was $64,000.00. The trial court ordered the husband to pay that amount in eight $8,000.00 annual installments, the first of which was due on 1 June 1981.

The husband failed to pay the initial installment. On 8 December 1981, a judgment in the amount of $8,000.00 was entered against him. That judgment was never paid. Thereafter, the husband failed to pay the second installment due on 1 June 1982.

On 2 June 1982, in the Circuit Court for Montgomery County, the wife filed a petition to "adjudicate the defendant in contempt of court" on the ground that he had failed to pay the previous judgment and the second installment. On 25 August 1982, the trial court determined that a monetary award granted pursuant to § 3–6A–05 "is a form of alimony and not a debt and therefore falls within the exception created by Section 38 of Article III of the Maryland Constitution...." It concluded that the husband was in contempt of court. The trial court ordered the husband incarcerated for a period of 90 days. The order did not provide for the husband's release in the event that the arrearages were paid before the expiration of the fixed term of imprisonment. The execution of sentence was stayed for 60 days to allow the husband to purge himself of contempt by payment of $8,000.00 to the wife.

On 22 September 1982, the husband filed an appeal to the Court of Special Appeals. On 9 December 1982, we issued a

writ of certiorari before consideration by that Court. We shall reverse the order of the trial court.

The husband contends that a monetary award is not a form of alimony and, therefore, is a debt within the scope of the Maryland Constitution, Art. III, § 38. He concludes that consequently a person cannot be imprisoned for nonpayment of a monetary award.

The wife contends that a monetary award is "alimony in gross," a form of alimony and, therefore, a court-ordered duty, not a debt, within the scope of the Maryland Constitution, Art. III, § 38. She concludes that a person can be imprisoned for the nonpayment of a monetary award. We do not agree.

## I

### Historical Background

In Maryland, the history of the evolution of alimony and property disposition incidental to a divorce demonstrates that the General Assembly and this Court have consistently distinguished between alimony and disposition of property incidental to a divorce.

### A. Alimony

Divorce in Maryland is a statutory creation that was unknown to the common law.[5] In England during the 17th and 18th centuries, courts did not grant absolute divorces but the ecclesiastical courts could grant limited divorces. The ecclesiastical courts could award alimony to the wife but only incidental to a limited divorce. *Thomas v. Thomas,* 294 Md. 605, 609–10, 451 A.2d 1215, 1217 (1982).

---

**5.** This Court has reviewed the history of divorce and alimony in England and in Maryland in many cases. *See, e.g., Thomas v. Thomas,* 294 Md. 605, 609–14, 451 A.2d 1215, 1217–20 (1982); *Courson v. Courson,* 213 Md. 183, 185–87, 129 A.2d 917, 918–19 (1957); *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033, 1035 (1913); *Helms v. Franciscus,* 2 Bland 544, 565–66 (1830).

In Maryland, there being no ecclesiastical courts, the General Assembly granted divorces. The doctrine that alimony could be awarded only incidental to a limited divorce was, however, not followed in Maryland. The power to grant alimony, even when a limited divorce was not sought, was deemed to be within the inherent authority of Maryland equity courts and such courts regularly exercised that authority. *See Thomas,* 294 Md. at 614, 451 A.2d at 1220; *Wald v. Wald,* 161 Md. 493, 500, 159 A. 97, 100 (1931); *Outlaw v. Outlaw,* 118 Md. 498, 501–03, 84 A. 383, 384–85 (1912); *Galwith v. Galwith,* 4 H. & McH. 477, 478 (1689).

By ch. 12, § 14 of the Acts of 1777,[6] which remains virtually unchanged and is now found in Md.Code (1974, 1980 Repl.Vol.) § 3–603(a) of the Courts and Judicial Proceedings Article, the General Assembly authorized equity courts to hear and determine alimony causes in the same manner as they were heard and determined by English ecclesiastical courts under English law. Nevertheless, the 1777 statute was construed as merely confirming the previously existing inherent authority of Maryland equity courts over alimony. It continued their power to award alimony, even though divorce was not sought, if sufficient grounds for a divorce were alleged and proven. *Thomas,* 294 Md. at 614 n. 16, 451 A.2d at 1220 n. 16; *Outlaw,* 118 Md. at 502–03, 84 A. at 385; *Helms v. Franciscus,* 2 Bland 544, 565–74 (1830). By ch. 262 of the Acts of 1841,[7] now § 3–603(a) of

---

**6.** Ch. 12, § 14 of the Acts of 1777, enacted during the February 1777 Session of the General Assembly, provided in pertinent part:

"*[T]he chancellor shall and may hear and determine all causes for alimony,* in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there." (Emphasis added.)

**7.** Ch. 262 of the Acts of 1841, enacted 1 March 1842, provided in pertinent part:

"Section 1. ... [T]he chancellor or any county court of this State as *a court of equity, shall have jurisdiction of all applications for divorces. . . .*

the Courts and Judicial Proceedings Article,[8] and Md.Code (1957, 1981 Repl.Vol.), Art. 16, § 1(a),[9] equity courts were given authority to grant both absolute and limited divorces and to award alimony to the wife incidental to an absolute or limited divorce. *Thomas,* 294 Md. at 609–14, 451 A.2d at 1217–20.

In the absence of a statutory definition of alimony, this Court repeatedly defined alimony as a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, for her support and maintenance during their joint lives or until the remarriage of the wife, so long as they live separately. *Thomas,* 294 Md. at 615, 451 A.2d at 1220; *Grove v. Frame,* 285 Md. 691, 695, 402 A.2d 892, 895 (1979); *Wallingsford v. Wallingsford,* 6 H. & J. 485, 488 (1823). Moreover, in the absence of statutory standards for the award of alimony, this Court repeatedly indicated the factors to be considered in determining the amount of alimony to be awarded. These factors included the wealth and earning capacity of the spouses, their station in life, their age, physical condition and ability to work, their needs at the time of the divorce, the length of time they lived together, and the circumstances leading to the divorce. *Brodak v. Brodak,* 294 Md. 10, 28, 447 A.2d 847, 856 (1982); *Wygodsky v. Wygodsky,* 134 Md. 344, 346–47, 106 A. 698, 698–99 (1919). Additionally, this Court repeated-

---

"Sec. 2. . . . That upon the hearing of any petition for a divorce, the chancellor or the county court as a court of equity, as the case may be, may decree *a divorce a vinculo matrimonii. . . .*

. . . . .

"Sec. 3. . . . That upon such petitions as aforesaid, *divorces, a mensa et thoro,* may be decreed . . . *in all cases where a divorce is decreed, the court* passing the same *shall have full power to award alimony to the wife. . . .*" (Emphasis added.)

**8.** § 3–603(a) provides in pertinent part:
"*A court of equity has jurisdiction* in an action *for divorce,* alimony, or annulment of marriage." (Emphasis added.)

**9.** Art. 16, § 1(a) provides in pertinent part:
"*In granting a limited or absolute divorce,* annulment, or alimony, *the court may award alimony. . . .*" (Emphasis added.)

ly determined that an award of alimony could be modified if the circumstances, needs, and pecuniary condition of the parties change. *Brodak,* 294 Md. at 29, 447 A.2d at 856; *Winkel v. Winkel,* 178 Md. 489, 500–01, 15 A.2d 914, 919 (1940); *McCaddin v. McCaddin,* 116 Md. 567, 574, 82 A. 554, 557 (1911).

By ch. 332 of the Acts of 1975, and ch. 575 of the Acts of 1980, now Md.Code (1957, 1981 Repl.Vol.), Art. 16, §§ 1 through 5, the General Assembly expanded the authority of equity courts in divorce cases over the matter of alimony. Article 16, § 1(a)[10] authorized equity courts, for the first time, to award alimony to either spouse. Article 16, § 1(b)[11] authorized equity courts to determine the amount of alimony to be awarded after considering an enumerated set of factors, most of which had previously been specified by this Court. For the first time, however, the monetary and nonmonetary contributions of the spouses to the well-being of the family and any monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article were included as factors to be considered. Most important, Art. 16, § 1(c),[12] for the first time, authorized equity courts

---

**10.** Art. 16, § 1(a) provides in pertinent part:
"In granting a limited or absolute divorce, annulment, or alimony, the court may award alimony *to either party....*" (Emphasis added.)

**11.** Art. 16, § 1(b) provides in pertinent part:
"[An alimony] award shall be *in such amount or amounts and for such period or periods of time as the court may deem just,* after it considers all relevant factors, including:
"(1) The financial needs and resources of both parties, including:
"(i) All income and assets, including non-income-producing property;
"(ii) *Any award made under §§ 3–6A–05* [monetary award] and 3–6A–06 of the Courts and Judicial Proceedings Article;
"(iii) The nature and amount of the financial obligations of each party; and
"(iv) The respective rights of the parties to receive retirement benefits." (Emphasis added.)

**12.** Art. 16, § 1(c) provides in pertinent part:
"In awarding alimony, the court:

to award alimony for a definite period of time rather than during the joint lives of the spouses, or until the marriage of the spouse receiving alimony (recipient spouse). Additionally, Art. 16, § 5(a) confirmed the authority of equity courts to modify the amount of alimony awarded,[13] while Art. 16, § 5(b)[14] defined the time at which the obligation to pay alimony should terminate.

### B. Ownership and Disposition of Property

■ In Maryland, the authority of equity courts to adjust the property rights of spouses incidental to either an absolute or limited divorce derives solely from statutes.[15] Although during the 17th and 18th centuries, Maryland equity courts had an inherent authority to grant alimony, such courts had no authority to divide property of the spouses or to transfer the property of either spouse to the other, or to otherwise dispose of it. *Lopez v. Lopez,* 206 Md. 509, 514–15, 112 A.2d 466, 468–69 (1955); *Gunter v. Gunter,* 187 Md. 228, 232, 49 A.2d 454, 456 (1946).

By ch. 262 of the Acts of 1841,[16] which remains virtually unchanged and is now found in Md.Code (1957, 1981 Repl.

---

"(1) Shall determine the period during which alimony shall be paid...."

**13.** Art. 16, § 5(a) provides in pertinent part:
"[T]he amount of alimony awarded under this title is subject to modification as the circumstances and justice may require."

**14.** Art. 16, § 5(b) provides:
"Unless the parties otherwise agree, the obligation to pay alimony under this title shall terminate upon the death of either party, the marriage of the party receiving alimony, or if the court finds that termination is necessary to avoid a harsh and inequitable result."

**15.** This Court has reviewed the history of property disposition incidental to a divorce in Maryland in many cases. *See, e.g., Brodak,* 294 Md. at 12–13, 447 A.2d at 848; *Lopez,* 206 Md. at 514–16, 112 A.2d at 468–69; *Hall v. Hall,* 180 Md. 353, 355, 24 A.2d 415, 415–16 (1942).

**16.** Ch. 262 of the Acts of 1841, enacted 1 March 1842, provided in pertinent part:
"*In all cases where a divorce is decreed, the court* passing the same *shall have full power* to award alimony to the wife and *to award to*

Vol., 1983 Cum.Supp.), Art. 16, § 25, the General Assembly authorized equity courts, incidental to either a limited or absolute divorce, to award the wife such property or estate as she had when she married. This right existed with respect to both real and personal property. *Reed v. Reed,* 109 Md. 690, 692–94, 72 A. 414, 414–15 (1909); *Tyson v. Tyson,* 54 Md. 35, 37 (1880); *Tayman v. Tayman,* 2 Md.Ch. 393, 394, 400–01 (1851); *see Brucker v. Benson,* 209 Md. 247, 250, 121 A.2d 230, 232 (1956).

By ch. 220 of the Acts of 1947,[17] now Md.Code (1974, 1980 Repl.Vol.) § 3–6A–03 of the Courts and Judicial Proceedings Article, the General Assembly again expanded the authority of equity courts with respect to disposition of property incidental to divorce. It authorized such courts to decide any question between the parties in connection with the ownership of personal property, to divide such property between them, or to order a sale and divide the proceeds. That section, however, did nothing more than empower equity courts, incidental to an absolute or limited divorce, to determine the ownership of personal property and apportion it accordingly. It did not authorize such courts to transfer the personal property of either spouse to the other or to make an adjustment of personal property rights where the wife did not make a monetary contribution toward the

---

the wife such property or estate, as she had when married or the value of the same or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court or chancellor may deem reasonable...." (Emphasis added.)

**17.** Ch. 220 of the Acts of 1947, effective 1 June 1947, provided:
"Whenever a Court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the Court may deem proper." (Emphasis added.)

purchase of the property. *Brodak,* 294 Md. at 12–13, 447 A.2d at 848; *Wimmer v. Wimmer,* 287 Md. 663, 667, 414 A.2d 1254, 1257 (1980); *Gebhard v. Gebhard,* 253 Md. 125, 130, 252 A.2d 171, 174 (1969); *Lopez,* 206 Md. at 515–17, 112 A.2d at 469. The authority of equity courts over real property remained restricted to a return to the wife of such property as the wife owned when she married.

By ch. 794 of the Acts of 1978, now Md.Code (1974, 1980 Repl.Vol., & 1983 Cum.Supp.) §§ 3–6A–01 through 3–6A–08 of the Courts and Judicial Proceedings Article, the General Assembly again expanded the authority of equity courts with respect to the disposition of property incidental to divorce. Section 3–6A–03[18] authorizes equity courts, incidental to either a limited or absolute divorce, to determine and state the ownership or ownership interest of each spouse in personal property and to order a sale of jointly-owned property and a division of the proceeds. That section expressly provides that in such cases equity courts may not transfer ownership of personal property from one spouse to the other. Section 3–6A–04,[19] for the first time, authorizes

---

18. § 3–6A–03 provides:
"(a) When granting a limited or absolute divorce, or annulment, the court may resolve any dispute between the spouses with respect to the ownership of personal property. However, the court may not transfer the ownership of personal property from one spouse to the other.
"(b) In accordance with the court's determination of the ownership of personal property the court may:
(1) Grant a decree which states what the ownership interest of each spouse is; and
(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds."

19. § 3–6A–04 provides:
"(a) When granting an absolute divorce or annulment, the court may resolve any dispute between the spouses with respect to the ownership of real property. However, the court may not transfer the ownership of real property from one spouse to the other.
"(b) In accordance with the court's determination of the ownership of real property, the court may:
(1) Grant a decree which states what the ownership interest of each spouse is; and

equity courts, incidental to an absolute divorce, to determine and state the ownership or ownership interest of each spouse in real property and to order a sale of jointly-held property and a division of the proceeds. Again, that section expressly provides that such an equity court may not transfer ownership of real property from one spouse to the other. Section 3–6A–05(a), for the first time, authorizes equity courts, incidental to an absolute divorce, to determine which property is marital property.[20] Most important, § 3–6A–05(b) authorizes equity courts to determine the value of all marital property and to grant a monetary award as an adjustment of the equities and rights of the spouses concerning marital property whether or not alimony is awarded. Section 3–6A–05(b)[21] enumerates a set of relevant factors to be considered in determining the amount of the monetary award including the award of any amount of alimony and the monetary and nonmonetary contribution of the spouses

---

(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds."

**20.** § 3–6A–01(e) defines marital property as follows:
" '*Marital property' is all property, however titled, acquired by either or both spouses during their marriage.* It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources." (Emphasis added.)

**21.** § 3–6A–05(b) provides in pertinent part:
"*The amount of the award and the method of its payment shall be determined after considering each of the following factors:*
(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;
(2) The value of all property interests of each spouse;
(3) The economic circumstances of each spouse at the time the award is to be made;

⋅ ⋅ ⋅ ⋅

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;
(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and *any award of alimony....*" (Emphasis added.)

to the well-being of the family. Section 3–6A–05(c) authorizes a monetary award to be reduced to judgment to the extent that any part of the award was due and owing. Although §§ 3–6A–01 through 3–6A–08 do not permit the court to transfer personal or real property from one spouse to the other, the statute does permit the court for the first time to adjust the marital property interests of spouses fairly and equitably, giving careful consideration to both monetary and nonmonetary contributions to the marriage. *Wimmer,* 287 Md. at 667 n. 2, 414 A.2d at 1257 n. 2.

### C. The Distinction Between Alimony and Disposition of Property

As previously stated, in the absence of a statutory definition of the term "alimony," this Court repeatedly defined alimony as a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, for her support and maintenance during their joint lives or until the remarriage of the wife, so long as they live separately. *E.g., Thomas,* 294 Md. at 615, 451 A.2d at 1220; *Grove,* 285 Md. at 695, 402 A.2d at 895; *Knabe v. Knabe,* 176 Md. 606, 612, 6 A.2d 366, 368–69 (1939); *Wallingsford,* 6 H. & J. at 488. Moreover, this Court repeatedly recognized a distinction between alimony and disposition of property incidental to a divorce. *Courson v. Courson,* 213 Md. 183, 186, 129 A.2d 917, 919 (1957); *Roberts v. Roberts,* 160 Md. 513, 523, 154 A. 95, 99 (1931); *Bushman v. Bushman,* 157 Md. 166, 172–73, 145 A. 488, 491 (1929); *Emerson v. Emerson,* 120 Md. 584, 590–91, 87 A. 1033, 1036 (1913); *Wallingsford,* 6 H. & J. at 488.

As long ago as 1823, in *Wallingsford v. Wallingsford,* 6 H. & J. 485 (1823), a wife filed a petition seeking, among other things, a "proper and reasonable allowance for her support." *Wallingsford,* 6 H. & J. at 485. In his answer, the husband stated that he was willing to allow her $2,000.00 "for a maintenance" from "such of his property that she might choose." *Wallingsford,* 6 H. & J. at 485. The husband moved to quash the proceedings on the ground that the wife had "left his bed and board, without any just cause or

provocation, and that he was perfectly willing that she return and live with him if she chose to do so." *Wallingsford,* 6 H. & J. at 486. The husband's motion was overruled. The trial court ordered that a part of the husband's real estate be sold and the proceeds paid to the wife. In concluding that the order could not be sustained because it constituted a disposition of property over which equity courts had no authority and not an award of alimony over which equity courts did have authority, this Court said:

> "Alimony is a maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct compels her to separate from him. *It is not a portion of his real estate, to be assigned to her in fee simple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live separate.* Upon the death of either, or upon their mutual consent to live together, it ceases, and the amount of this allowance must depend upon the value of the husband's estate.
>
> . . . . .
>
> The decree does not direct an income to be paid for the maintenance of the wife. It does not create a personal liability in the husband to pay any sum of money, but orders in the first instance his land to be sold." *Wallingsford,* 6 H. & J. at 488–89 (emphasis added).

Thus, this Court established that in divorce cases alimony and disposition of property were separate and distinct. An award of a specified sum of money resulting from a court-ordered sale of a husband's property constituted a disposition of property. It did not constitute alimony.

The distinction between alimony and disposition of property was again considered in *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033 (1913). There the trial court incorporated into the divorce decree an agreement that provided that "the husband shall pay the wife $28,800.00 per annum, in monthly installments, during her life." *Emerson,* 120 Md. at 586, 87 A. at 1034. This Court determined that the trial

court's order, incorporating agreed upon money payments that were not made terminable upon the remarriage of the wife or the death of the husband, did not constitute an award of alimony and, therefore, could not be modified. In reaching this result, this Court construed ch. 262, § 3 of the Acts of 1841, which authorized equity courts to award alimony to a wife incidental to divorce. The Court's construction of that Act was premised upon the rationale that in Maryland there is a distinction between alimony and disposition of property. There this Court said:

> "*We think it is clear, then, that the Act providing for alimony upon this decree, new to the Courts, was intended to provide for alimony of the same character and limitations as the alimony the Courts had for so long dealt with.* In a great many of the States statutes provide that the Court shall award to the wife by way of alimony upon a decree for divorce a portion of the property held by the husband and wife or a sum of money in lieu of the property, to be absolutely hers. Although this is designated as alimony it is totally different from the theory of alimony as recognized in Maryland. *One is a division of property, while the other is the maintenance of the wife* out of the income of the husband." *Emerson,* 120 Md. at 590–91, 87 A. at 1036 (emphasis added).

Thus, this Court reiterated that in divorce cases alimony and disposition of property were separate and distinct. An award to the wife of property held by the husband and wife, or an award of a specified sum of money in lieu of such property, constituted a disposition of property. It did not constitute alimony.

The distinction between alimony and disposition of property was again emphasized in *Bushman v. Bushman,* 157 Md. 166, 145 A. 488 (1929), a case with facts strikingly similar to those here. There, a divorce decree incorporated an agreement between a husband and a wife for the payment of $40,000.00 in four equal installments. The decree, in accordance with the agreement, provided that the four installments would be "in full satisfaction and discharge of any

and all claims by way of alimony. . . ." *Bushman,* 157 Md. at 171, 145 A. at 491. The husband failed to pay some of the installments and was held in contempt of court.

This Court considered the question "whether the [equity] court had jurisdiction to enforce payment of the sums awarded by the decree by an order committing the defendant to prison for contempt of court." *Bushman,* 157 Md. at 170, 145 A. at 490. This Court noted that "[t]he answer depends upon whether the decree is for alimony, because alimony does not constitute a debt within the meaning of that term in the constitutional prohibition of imprisonment for debt." *Bushman,* 157 Md. at 170, 145 A. at 490. Commenting upon its previous construction in *Emerson* of ch. 262, § 3 of the Acts of 1841, which distinguished between alimony and disposition of property, this Court said:

"This is a clear and pertinent construction of the Maryland statute, empowering the allowance of permanent alimony in a decree dissolving the bond of marriage. Whatever may be the statutory rule and construction in other jurisdictions, in this state the allowance of alimony in cases of separation or either kind of divorce is of the nature and in the form according to the practice derived from the English ecclesiastical courts. The rule is thus stated in *Bishop on Marriage and Divorce: 'The court cannot decree to the wife as alimony, a gross sum, or absolute title in specific property, or a sale of a part of the husband's estate for her use.* But we have statutes, to be explained in future chapters, allowing this sort of provision, and sometimes it is termed alimony.'

"If a gross sum were allowable in the discretion of the court as a substitute for regular payments, the gross sum would represent the capitalization of a proportion of the husband's income; and a compliance with the decree would immediately reduce his principal or property by that amount, and transfer a specific proportion of the husband's estate absolutely to the wife. 2 *Bishop on Marriage and Divorce,* secs. 1030–1036; *Ricketts v. Ricketts,* 4 Gill 105, 109. In the event of her death a day later,

the lump sum, undiminished by any appropriation to her maintenance, would pass to her personal representatives for distribution as part of her estate; and, if she lived, it was her absolute property to do with as she liked. *In no true sense would the award of a gross sum be alimony, since it could neither be increased nor be reduced according to the exigency of circumstances; nor would the obligation to pay it as decreed be affected by the death of either the husband or the wife.*

. . . . .

"Since the decree in this case was not for alimony within the meaning of the statute, but was for the payment of a specified sum of money in accordance with the agreement of the parties, the defendant could not be punished by imprisonment because of his refusal to pay the money as decreed." *Bushman,* 157 Md. at 173–74, 145 A. at 491–92 (emphasis added) (citations omitted).

Thus, this Court again reiterated that the award of a specified sum of money, even when required to be paid in installments, did not constitute alimony. Indeed, it concluded that "[i]n the absence of special agreement of the parties or of statutory authorization the [equity] court may not decree alimony in gross." *Bushman,* 157 Md. at 172, 145 A. at 491.

II

Present Legislative Enactments

There is nothing in the legislative history of § 3–6A–05 of the Courts and Judicial Proceedings Article or Art. 16, §§ 1 through 5 to indicate that the General Assembly intended to abolish Maryland's traditional distinction between alimony and disposition of property, and to authorize equity courts, in the absence of an agreement between the parties, to award "alimony in gross."

A. Property Disposition in Divorce and Annulment Act

■ Maryland's Property Disposition in Divorce and Annulment Act (Property Disposition Act), Md.Code (1974, 1980

Repl.Vol., & 1983 Cum.Supp.) §§ 3–6A–01 through 3–6A–08 of the Courts and Judicial Proceedings Article constitutes the initial phase of a comprehensive revision of Maryland's domestic relations law. It represents a new legislative approach to the rights and obligations associated with marriage and its dissolution. It embodies a significant modification of the property rights of spouses incidental to an absolute divorce by allowing equity courts to equitably distribute property acquired during the marriage and to grant a monetary award adjusting the interests of the spouses in such marital property. In determining the amount of such a monetary award, equity courts are required, in accordance with the announced policy of the General Assembly, to give careful consideration to both monetary and nonmonetary contributions of the spouses. *Harper v. Harper,* 294 Md. 54, 63, 448 A.2d 916, 920–21 (1982); *Deering v. Deering,* 292 Md. 115, 117, 437 A.2d 883, 884 (1981); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 24–25, 410 A.2d 1052, 1055 (1980); *Wimmer,* 287 Md. at 667 n. 2, 414 A.2d at 1257 n. 2.

The Property Disposition Act was proposed by The Governor's Commission on Domestic Relations Laws (Commission). In its "Report Accompanying the Commission's Proposed Bill on the Disposition of Property in Connection with a Divorce or Annulment," the Commission repeatedly indicated that the Property Disposition Act was intended to deal with the disposition of property and not with the subject of alimony, maintenance or spousal support. Report of The Governor's Comm'n on Domestic Relations Laws, at 1, 14, 18 (1978).[22] Thus, in a prefatory statement, the Commission said:

"The Governor's Commission on Domestic Relations Laws was established by Governor Marvin Mandel on February 27, 1976. He defined the scope of its responsi-

---

**22.** Committee reports may be considered in determining legislative intent. *Bledsoe v. Bledsoe,* 294 Md. 183, 189, 448 A.2d 353, 356 (1982); *Blumenthal v. Clerk of the Circuit Court for Anne Arundel County,* 278 Md. 398, 404–05, 365 A.2d 279, 283 (1976).

bilities as being '*to undertake a complete study of the constitutional, statutory, and common law concerning domestic relations, including the laws concerning marriage, the dissolution of marriage, the rights and obligations attendant upon or accruing from each, and the procedures for resolving and adjudicating domestic disputes.*' After a series of meetings described in the Chairman's letter to the Acting Governor under date of January 9, 1978, in which the Commission detailed the tasks before it and considered their respective priority and urgency of accomplishment, *it turned its attention to the subject matter which it considered to be most urgent of review: the disposition of property* upon the dissolution or annulment of marriage. *The Commission proposes to deal separately with the subject of alimony, maintenance, or spousal support,* with which the subject at hand is of course closely related." Report of The Governor's Comm'n on Domestic Relations Laws, at 1 (1978) (emphasis added).

According to the Commission, the Property Disposition Act was designed to cure "the perceived existing inequity in present Maryland law governing the disposition of real and personal property upon divorce or annulment." Report of The Governor's Comm'n on Domestic Relations Laws, at 2 (1978). The Commission, recognizing that "non-monetary contributions within a marriage are real," stated as its purpose that such nonmonetary contributions "should be recognized in the event that the marriage is dissolved or annulled." Report of The Governor's Comm'n on Domestic Relations Laws, at 3 (1978). The Commission then concluded:

"[W]hat was needed in fact was a definition of the rights of the parties, in the *disposition of property* upon divorce or annulment, which would correct those inequities that uncorrected historical development of the law had wrought, and which would comport with what the Commission perceives as a reasonable and workable system of such property disposition for the people of this State."

Report of The Governor's Comm'n on Domestic Relations Laws, at 14 (1978).

More particularly, the Commission said that the Property Disposition Act "does relate, as its Title indicates, *only to the disposition of property between spouses....*" Report of The Governor's Comm'n on Domestic Relations Laws, at 17 (1978) (emphasis added). Finally, in response to objections that the Property Disposition Act related only to property rights in divorce actions and did not propose changes in the law relating to other subjects such as alimony, the Commission said:

"[T]he fact is that other subjects within the scope of the Commission's charter, *such as alimony* and grounds for divorce, are related to the legal provisions relating to the disposition of property—and that whatever action the General Assembly takes regarding the subject of this [Act] . . . will strongly influence the action . . . which the General Assembly may take, with respect to those related subjects. *It seems clear that the question of property disposition is central to any general revision of the divorce and annulment law of this State, and that we had better get on with settling the law on that subject so that we may move ahead with a concomitant adjustment in law on related subjects.*" Report of The Governor's Comm'n on Domestic Relations Laws, at 18 (1978) (emphasis added).

Thus, the Commission indicated in a variety of ways that the purpose of the Property Disposition Act was to provide for a fair and equitable distribution of property. It was not intended to alter Maryland's traditional concept of alimony or to authorize the award of "alimony in gross."

 The General Assembly's awareness that the scope of the Property Disposition Act was restricted to the disposition of property is equally manifest. The stated purpose of the Property Disposition Act is to grant equity courts "the authority to make monetary awards and provide for the disposition and use of property under certain circumstances

in conjunction with a divorce. . . ."[23] Ch. 794 of the Acts of 1978, effective 1 January 1979. The Property Disposition Act's preamble reads in pertinent part:

"[I]t is the policy of this State that when a marriage is dissolved *the property interests of the spouses should be adjusted fairly and equitably,* with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family. . . ." Ch. 794 of the Acts of 1978, preamble.[24] (emphasis added).

Subtitle 6A of the Courts and Judicial Proceedings Article is entitled "Property Disposition in Divorce and Annulment."[25] The Property Disposition Act itself embodies a statutory scheme whose parts are logically organized to deal with the disposition of property upon the dissolution of a marriage.[26] Report of The Governor's Comm'n on Domestic Relations Laws, at 15 (1978). Section 3–6A–01 of the Courts and

---

**23.** A court must consider a statute's purpose in determining legislative intent. *Oxtoby v. McGowan,* 294 Md. 83, 95, 447 A.2d 860, 867 (1981); *Montgomery v. State,* 292 Md. 155, 159, 438 A.2d 490, 491 (1981); *Department of State Planning v. Mayor of Hagerstown,* 288 Md. 9, 14, 415 A.2d 296, 299 (1980).

**24.** The preamble to a statute may be considered in determining legislative intent. *State v. Loscomb,* 291 Md. 424, 434 n. 12, 435 A.2d 764, 769 n. 12 (1981); *Dillon v. State,* 277 Md. 571, 583, 357 A.2d 360, 367–68 (1976); *Chesapeake & Ohio Canal Co. v. Baltimore & Ohio R.R. Co.,* 4 G. & J. 1, 91 (1832).

**25.** The title of a statute may be considered in determining legislative intent. *Board of County Commissioners of Carroll County v. Stephans,* 286 Md. 384, 395, 408 A.2d 1017, 1022 (1979); *Mayor of Baltimore v. Deegan,* 163 Md. 234, 238, 161 A. 282, 283 (1932); *Bradford v. Jones,* 1 Md. 351, 370 (1851).

**26.** The primary source from which to determine the intention of the General Assembly is the language of the statute itself. A court must read the language of a statute in context and in relation to all of its provisions in determining legislative intent. *Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 361–62, 456 A.2d 20, 27 (1983); *Haskell v. Carey,* 294 Md. 550, 556, 451 A.2d 658, 662 (1982); *Comptroller of the Treasury v. John C. Louis Co.,* 285 Md. 527, 538, 404 A.2d 1045, 1052 (1979).

Judicial Proceedings Article defines three types of property—new to Maryland's Domestic Relations Law—family home, family use personal property, and marital property. Section 3–6A–03 describes the authority of equity courts with respect to personal property and family use personal property. Section 3–6A–04 describes the authority of equity courts with respect to real property. Section 3–6A–05 describes the authority of equity courts with respect to marital property and the adjustment of the parties' rights and equities concerning that property. Indeed, that section authorizes equity courts to grant a monetary award, whether or not alimony is awarded, and requires equity courts to consider the amount of any award of alimony in determining the amount of the monetary award. Moreover, that section enables a monetary award to be reduced to judgment to the extent that any part of the award is due and owing. Section 3–6A–06 describes the authority of equity courts with respect to the family home. Section 3–6A–08 provides for enforcement in accordance with the Maryland Rules of any type of property disposition award.

■ Thus, the legislative history of the Property Disposition Act, the language of that Act when read in context and in relation to all of its provisions, and its stated purpose overwhelmingly establish a legislative intent to restrict the scope of the Property Disposition Act to the disposition of property acquired before and during the marriage. It was not intended to alter Maryland's traditional concept of alimony or to authorize the award of "alimony in gross."

### B. The 1980 Alimony Act

Maryland's 1980 Alimony Act (1980 Alimony Act), Md. Code (1957, 1981 Repl.Vol.), Art. 16, §§ 1 through 5, constitutes the second phase of a comprehensive revision of Maryland's domestic relations law. It represents a new legislative approach to the rights and obligations associated with a form of spousal support—alimony. The 1980 Alimony Act embodies.a significant modification of the previous right to alimony for an indefinite period terminable upon the death

of either spouse or the marriage of the recipient spouse. It allows equity courts to award alimony for a definite period of time after considering, among other things, both the monetary and nonmonetary contribution of the spouses, and any monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article.

The 1980 Alimony Act was proposed by The Governor's Commission on Domestic Relations Laws. In its "Report on a Proposed Bill Relating to Alimony . . . ," the Commission repeatedly indicated that the 1980 Alimony Act was intended to deal with the subject of alimony and not with property disposition. Thus, the Commission said:

"Early in its deliberations the Commission decided that, while the question of the division of property at the time of divorce was the most pressing problem before it, the question of alimony was a rather close second.

*"The matter of property division has been resolved,* at least for the present, by the enactment of Ch. 794, Acts of 1978 (Subtitle 6A, Article on 'Courts and Judicial Proceedings'). Now, the accompanying proposed Bill embodies the legislative recommendations which the Commission believes should be enacted into law *on the subject of alimony."* Report of The Governor's Comm'n on Domestic Relations Laws, at 1 (1980) (emphasis added).

All of the questions considered by the Commission centered upon various aspects of alimony. Of prime importance was the duration of time for which alimony should be required. The Commission determined that the purpose of alimony was "to provide an economic means for both parties to deal with their new unmarried life on their own," or put another way, "to provide an opportunity for the recipient party to become self-supporting." Report of The Governor's Comm'n on Domestic Relations Laws, at 2 (1980). Indeed, the Commission recognized that "the purpose of an award of alimony at the time of divorce is not to provide a lifetime pension, but to facilitate a transition for the parties from the joint married state to the separate single one, where this is practicable." Report of The Governor's Comm'n on Domes-

tic Relations Laws, at 4 (1980). The Commission recommended that "[t]he award of alimony in the ordinary case should be for a specific time, and that time should be stated in the Order or Decree. . . ." Report of The Governor's Comm'n on Domestic Relations Laws, at 4 (1980). Other questions relating to alimony considered by the Commission included modification of the doctrine of recrimination, reimbursability of costs already expended, participation of the State in the collection of arrearages, and award of judgment for attorney's fees. Report of the Governor's Comm'n on Domestic Relations Laws, at 7 (1980). Thus, the Commission in various ways indicated that the purpose of the 1980 Alimony Act was to "provide the fairest possible outcome of the alimony problem for most divorcing parties in this State." Report of The Governor's Comm'n on Domestic Relations Laws, at 2 (1980).

The General Assembly's awareness that the scope of the 1980 Alimony Act was restricted to alimony is equally manifest. The 1980 Alimony Act was passed for the purpose "of defining, consolidating and establishing the law with respect to alimony; establishing uniform procedures for enforcing alimony obligations; clarifying language, resolving conflicts, and defining certain terms; and relating generally to alimony." Ch. 575 of the Acts of 1980, effective 1 July 1980. The subtitle of Art. 16, §§ 1 through 5 is "Alimony."

The 1980 Alimony Act itself embodies a statutory scheme whose parts are logically organized to deal with alimony upon the dissolution of a marriage. Article 16, § 1 describes the authority of equity courts to award alimony and enumerates the factors to be considered in determining the amount of the award and the period of its duration. Indeed, that section requires equity courts to consider any monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article in determining the amount of alimony. Article 16, § 2 authorizes equity courts to order that alimony payments be made to a designated government agency or trustee. Article 16, § 3 describes the authority of equity courts to order the payment of necessary and reason-

able expenses incurred in any proceeding to enforce an alimony award. Article 16, § 4 describes the authority of equity courts to award alimony against nonresident defendants. Article 16, § 5 describes the authority of equity courts to modify or terminate alimony awards.

■ Thus, the legislative history of the 1980 Alimony Act, the language of that Act when read in context and in relation to all of its provisions and its stated purpose overwhelmingly establish a legislative intent to restrict the scope of the 1980 Alimony Act to alimony. It was not intended to alter Maryland's traditional distinction between alimony and disposition of property, or to authorize the award of "alimony in gross."

### III

#### Analysis and Conclusion

■ We recognize, as contended by the wife, that there is an interrelationship between a monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article and an award of alimony granted pursuant to Md.Code Art. 16, § 1. A monetary award, particularly one required to be paid in installments, resembles an award of alimony that requires periodic payments for a definite period of time. Moreover, in determining the amount of either a monetary award or alimony, equity courts are required to consider similar factors, such as the value of all property interests of the spouses, the contributions—monetary and nonmonetary—of the spouses, the economic circumstances of the spouses at the time of the award, the facts and circumstances that contributed to the estrangement of the spouses, and the duration of the marriage. Additionally, in determining the amount of a monetary award, equity courts must consider any award of alimony, while in determining the amount of alimony, equity courts must consider any monetary award. Moreover, a monetary award may be reduced to a judgment only to the extent that any part of the award is due and owing. Finally, a monetary award may be

granted when alimony is not granted. However, we do not agree with the wife's assertion that as a result of the interrelationship between a monetary award and an award of alimony "the marital property award is clearly another form of alimony."

■ There can be no question that a monetary award and an award of alimony now possess some common characteristics, and that a monetary award may be granted when alimony is not granted. Nevertheless, the interrelationship between a monetary award and an award of alimony does not transform a monetary award into a form of alimony or a substitute for alimony.

■ Throughout Maryland's history, property disposition and alimony have evolved as separate and distinct concepts. Most recently, the General Assembly has enacted separate statutes governing the disposition of property and the award of alimony, each with a different purpose. The purpose of the Property Disposition Act is to provide for an equitable distribution of property acquired during the marriage and, therefore, to compensate for the monetary and nonmonetary contributions of the spouses made before the dissolution of the marriage. The purpose of the 1980 Alimony Act is to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage. Most important, in each of the separate statutes enacted, the General Assembly specifically uses both the terms "monetary award" and "alimony" and consistently treats these concepts as separate and distinct. Viewed in this context, it is apparent that the mere facts that the General Assembly established an interrelationship between a monetary award and an award of alimony, that such awards now possess some common characteristics, and that a monetary award may be granted when alimony is not are insufficient, in and of themselves, to establish that the General Assembly intended that a monetary award be a form of alimony or a substitute for alimony.

■ Moreover, we do not agree with the wife's assertion that § 3–6A–08 of the Courts and Judicial Proceedings Article would be purposeless unless a monetary award is determined to be a form of alimony enforceable by contempt. Sections 3–6A–01 through 3–6A–07 authorize different types of property disposition awards including an award of personal property, real property, a family home, family use personal property, as well as a monetary award relating to marital property. Section 3–6A–08 provides that any type of property disposition award granted pursuant to §§ 3–6A–01 through 3–6A–07 may be enforced in accordance with the Maryland Rules. Maryland Rule 685 provides equity courts with a wide array of enforcement procedures including a procedure for enforcement by contempt.[27] However, not every available procedure is necessarily appropriate to enforce each type of property disposition award. *See Dickey v. Dickey,* 154 Md. 675, 681, 141 A. 387, 390 (1928).[28]

---

**27.** Md.Rule 685 provides in pertinent part:
"Rule 685. Enforcement of Decree and Order ... Equity
a. Attachment—Sequestration—Fieri Facias—Injunction.
"The court may, for the purpose of executing a decree, or to compel the defendant to perform and fulfill the same, *issue attachment of contempt,* attachment with proclamations and sequestration against the defendant, and may order an immediate sequestration of the real and personal estate and effects of the defendant, or such parts thereof as may be necessary to satisfy the decree and clear the contempt, or may issue a *fieri facias* against the lands and tenements, goods and chattels of the defendant, to satisfy the said decree, or may issue an attachment by way of execution against the lands, tenements, goods, chattels and credits of the defendant, to satisfy the said decree; or the court may cause, by injunction, the possession of the estate and effects whereof the possession or a sale is decreed, to be delivered to the plaintiff, or otherwise, according to the import of such decree, and as justice may require."

**28.** In *Dickey,* this Court recognized that although a decree for spousal support directing the payment of money rather than alimony could not be enforced by contempt, such a decree could be enforced by other available procedures.
It is of historical interest to note that at the time *Dickey* was decided, Md. Const., Art. III, § 44, adopted in 1841, the precursor of Art. III, § 38, was applicable. That section provided:
"No person shall be imprisoned for debt."

Rather, each of the available enforcement procedures can be employed only in an appropriate case. *See Brown v. Brown,* 287 Md. 273, 288, 412 A.2d 396, 404 (1980).[29]

■ Recently, this Court recognized that contempt is an appropriate procedure to enforce an award of the use of a family home and family use personal property. *Pitsenberger,* 287 Md. at 24, 410 A.2d at 1055.[30] Because contempt is

---

In *Dickey,* this Court drew a distinction between the terms "duty" and "debt." The obligation to pay alimony was described as a "duty" that could be enforced by contempt. An agreement for wife support that required periodic payments but did not provide for the termination of the payments upon the death of the husband, even when incorporated in a valid decree, was held to be a debt that could not be enforced by contempt.

Subsequently, Md. Const., Art. III, § 38, ratified 7 November 1950, amended Art. III, § 44 adopted in 1851. The 1950 amendment provided:

"No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or *agreement approved by decree of said court for the support of a wife* or dependent children, or for alimony, shall not constitute a debt within the meaning of this section." (Emphasis added.)

Thus, the 1950 amendment made both a decree relating to spousal support that directed the payment of money, and a decree awarding alimony, enforceable by contempt.

**29.** In *Brown,* this Court recognized that although under Md. Const., Art. III, · § 38 a decree for support of a stepchild could not be enforced by contempt, such a decree could be enforced by other available procedures.

**30.** § 3–6A–06 authorizes an award relating to the use of a family home and family use personal property. In *Pitsenberger,* the trial court awarded the exclusive use of the family home to the wife. The husband failed to vacate the family home. The wife petitioned to have the husband held in contempt. The trial court determined that contempt was an appropriate enforcement procedure, but found that the husband was not in contempt as he had not willfully violated the court's exclusive use order. The trial court ordered the husband to vacate by a specified date and expressly stated that "[h]is failure to do so shall be regarded as a contempt punishable under the contempt powers of this court." This Court affirmed the trial court's order.

An appellate court may take judicial notice of the record in other cases before it. *Dean v. State,* 291 Md. 198, 203, 434 A.2d 552, 555 (1981); *Jeweler v. Potomac Electric Power Co.,* 217 Md. 458, 463, 144 A.2d 66, 68 (1958). Consequently, we take judicial notice of the trial court's order that appears in the record in *Pitsenberger.*

available to enforce such awards, § 3–6A–08 is not purposeless even though contempt may not be available for the enforcement of a monetary award.

We further recognize that the 1980 Alimony Act authorizes equity courts to award alimony for a definite period of time and that, because the amount of such an award can readily be determined, it may appear to authorize an award of a lump sum or "alimony in gross." However, notwithstanding that an award of alimony is restricted to a definite period of time, it nevertheless requires periodic payments that terminate upon either the expiration of the definite duration, death of either spouse, or the marriage of the recipient spouse and remains subject to modification until terminated. Art. 16, § 5. Thus, an alimony award that is restricted to a definite period of time retains most of the fundamental characteristics associated with Maryland's traditional concept of alimony—an award that requires periodic payments that terminate upon the death of either spouse or the marriage of the recipient spouse and remains subject to modification until terminated. Under these circumstances, we are persuaded that an award of alimony for a definite period of time does not constitute the award of a lump sum and cannot be characterized as "alimony in gross." Consequently, the authority given to equity courts to grant an alimony award that is restricted to a definite period of time does not empower such courts to award "alimony in gross."

Neither history nor precedent nor logic supports the wife's contention that a monetary award constitutes a form of alimony. Accordingly, we now hold that a monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article constitutes a property disposition award that adjusts the marital property interests of the spouses. It does not constitute a form of alimony.

Here the trial court granted an award of alimony and a monetary award. The monetary award constituted an adjustment of the marital property interests of the spouses. It

did not constitute a form of alimony within the scope of the Maryland Constitution, Art. III, § 38. Consequently, the monetary award could not be enforced by contempt. Under these circumstances, we shall reverse the order of the trial court.[31]

ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED.

COSTS TO BE PAID BY RESPONDENT.

---

**31.** In view of our decision, we need not consider the husband's remaining contention that the trial court's order finding him in contempt and ordering his incarceration for 90 days was improper because it did not provide for the husband's release in the event that the arrearages were paid before the expiration of the fixed term of imprisonment.