## JACKSON *v.* JACKSON

[No. 120, September Term, 1967.]

Decided March 6, 1968.

Motion for rehearing filed April 4, 1968; denied April 5, 1968.

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Robert Anthony Jacques* for appellant.

*John P. Arness,* with whom were *James J. Cromwell* and *Clark & Cromwell* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This case began when a petition and caveat to the alleged Last Will and Testament of Thomas J. Jackson, deceased, was filed in the Orphans' Court for Montgomery County, Maryland, by his son, Andrew Jackson, appellant. After issues were framed they were transferred to the Circuit Court for Montgomery County for trial by jury, Judge Mathias presiding. At the close of the caveator's case the judge granted the motion of the caveatee, Helen T. Jackson, appellee, for a directed verdict sustaining the validity of the will, resulting in this appeal.

The deceased was born January 25, 1892, in Columbia, Tennessee. He was a lawyer and after serving for seventeen years in this capacity in the United States Army, beginning in the mid-1930's he actively engaged in private practice in the District of Columbia and Maryland. Mr. Jackson appears to have continued his practice until late in 1961 or early in 1962, as evidenced by a letter dated January 12, 1962, in which he advised a client that he was "rather ill and discontinuing my ac-

tive practice." He was first married in 1919 to Raymonde Vereouter Jackson and two sons were born of that union before the marriage was terminated by divorce in 1926. These children were Andrew Jackson, the caveator, and John E. Jackson, his brother. The decedent married Helen T. Jackson, the appellee-caveatee, in 1947. There was apparently no issue born of this marriage.

The will involved here was dated April 25, 1962, and contains nine numbered, concise paragraphs. The language of the will indicates that it was prepared by an attorney. The first paragraph revokes prior wills. The second paragraph directs the payment of debts, expenses of the testator's last illness and funeral expenses. The third paragraph provides: "3. I give and bequeath to my son Andrew Jackson twenty (20) shares of American Telephone & Telegraph stock." The fourth paragraph bequeaths and devises any real estate, and improvements, in the State of Alabama to John E. Jackson. The fifth paragraph bequeaths and devises to Helen T. Jackson any real estate, with improvements thereon, within the States of Virginia, Maryland, Tennessee, and the District of Columbia. The sixth paragraph is a residuary clause, leaving all of the remaining real and personal property to Helen T. Jackson. The seventh paragraph provides that if anyone refuses to accept anything under the will, it is to be considered as part of the residue. The eighth paragraph provides that anyone attempting to contest this will shall receive nothing under it. The ninth paragraph appoints Helen T. Jackson as executrix of the will, to serve without bond, and, if in case of her prior death or refusal to serve, that his son John E. Jackson serve as executor, likewise without bond. Mr. Jackson died July 19, 1965, leaving as survivors Helen T. Jackson, his wife, and two sons, John E. Jackson, and Andrew Jackson, the appellant here. The testator's estate was valued at $156,121.35. as shown in the first account of the administratrix pendente lite, approved on May 29, 1967. The testator's son, John E. Jackson, consented to the will being admitted to probate and requested that letters testamentary be granted to Helen T. Jackson, as executrix named in the will.

It was conceded at the trial that the will was properly executed. During the trial evidence was offered by the caveator

bearing only upon the issues of undue influence and mental capacity of the testator. On this appeal the caveator concedes that no legally sufficient evidence was produced justifying the submission to the jury of the issue concerning undue influence. The sole issue involved here relates to the testator's testamentary capacity.

The appellant first assigns error in the ruling of the trial court that certain military medical records from 1934 to 1960 were not admissible in evidence. These records were offered for the purpose of proving that the testator was not of sound mind at the time the will was executed but when counsel for the appellant offered these records for admission his proffer included the following: that the testator was admitted to an army hospital in 1934 for mental observation; that he was found fit and returned to duty; that he subsequently received a Section B discharge, which meant that he was not qualified to perform the duties assigned to him (but not giving reasons for lack of qualification); that in 1938 there was a diagnosis of arteriosclerosis and this was reaffirmed in 1950; that in 1957 he suffered a heart attack; and that in 1958 he underwent an operation for a resection in his leg and that at this time the presence of the arteriosclerotic condition was again confirmed. Even if admitted in evidence, none of these facts contained within the records would have shown that the testator was not of sound and disposing mind when the will was executed. Thus there could have been no prejudice in excluding them. We do not find it necessary to decide the question of whether the contents of the records were privileged communications under Code (1957, 1966 Cum. Supp.), Article 35, Section 13A, or whether these documents were properly authenticated. The records offered covering the period from September 1962, when the testator suffered a stroke requiring his treatment in various hospitals, to July 19, 1965, when he died, were not relevant in that they were too remote and did not go to prove mental incapacity of the testator at the time the will was executed. Without deciding if these records were admissible for the purpose of impeaching the testimony of Mrs. Jackson, the caveatee, we hold that they were certainly inadmissible as substantive evidence of the testator's mental capacity when the will was executed and could

form no basis for the expression of an expert's opinion concerning it.

The appellant also contends that the trial court erred in refusing to allow Dr. Hall, a psychiatrist, to express an opinion as to the testator's mental capacity when the will was executed where such opinion would have been based in part upon the diagnosis and evaluations of former examining psychiatrists. The appellant relies on *Doyle v. Rody,* 180 Md. 471, 25 A. 2d 457, for the proposition that a layman can testify as to the sanity of an individual if he gives sufficient basis for his opinion and if he does so this is in substance a fact. He then reasons that if the testimony of a lay witness is to be regarded as fact then the testimony of an expert should be entitled equally to be regarded as fact. There is, however, a distinction between lay and expert testimony. This is because in order for the opinion of a lay witness to be admissible in evidence he must give a reasonable basis for his opinion, while a medical expert who has personally examined a patient may give an opinion as to his sanity without giving the basis for his opinion. *Doyle v. Rody, supra; Love v. Love,* 158 Md. 481, 148 Atl. 814. Here, however, the expert had no opportunity to see or personally examine the testator and the trial court was justified in refusing to allow him to express an opinion of the testator's mental capacity at the time the will was executed when such opinion would have been based on the opinions of other experts as contained in the records. The question of the admissibility of these records was argued before the court below and part of the documents were read and proffers were made as to their contents. As this Court said in *Grant v. Curtin,* 194 Md. 363, 384, 71 A. 2d 304:

> "When evidence to show mental incapacity relates to circumstances which are not obscure and need no explanation by a physician, and are legally insufficient to support an inference of incapacity, the testimony of a medical expert is not admissible to show that he draws such an inference from such evidence, and if admitted, is not legally sufficient to show incapacity."

See also *Sachs v. Little,* 245 Md. 343, 226 A. 2d 283.

There is a presumption that one has the capacity to execute a valid will. As Judge Horney said in *Arbogast, Exec. v. MacMillan,* 221 Md. 516, 523, 158 A. 2d 97 :

> "The law presumes that every man is sane and has capacity to make a valid will, and the burden of proving the contrary rests upon those who allege that he lacked mental capacity. *Cronin v. Kimble,* 156 Md. 489, 494, 144 Atl. 698, 700 (1929) ; *Smith v. Shuppner,* 125 Md. 409, 417, 93 Atl. 514, 517 (1915). Moreover, in the absence of proof of prior permanent insanity, it must be shown that the testator was of unsound mind at the time the will was executed in order to overcome the presumption of sanity. *Acker v. Acker,* 172 Md. 477, 192 Atl. 327 (1937) ; *Gesell v. Baugher,* 100 Md. 677, 60 Atl. 481 (1905)."

*Waple v. Hall,* 248 Md. 642, 238 A. 2d 544 ; *Ingalls v. Trustees,* 244 Md. 243, 223 A. 2d 778.

On the record before us it appears that the appellant's evidence did not make out a case of lack of mental capacity of the testator. The testimony of the caveator's witnesses who had the opportunity to observe the testator at or near the time of the execution of the will was merely to the effect that he was forgetful, no longer operated a car, was less active than formerly, that he would sit and stare for long periods and that he was less talkative and communicative. These actions are not indicative of unsound mind and are entirely consistent with the actions commonly observed in persons of the testator's age (he was seventy when the will was executed). Eccentricity, old age, debility, and disappointment of reasonable expectations of prospective beneficiaries are not the yardsticks by which mental capacity can be measured. *Waple v. Hall, supra; Sellers v. Qualls,* 206 Md. 58, 110 A. 2d 73. We, therefore, conclude that the trial court was correct in directing a verdict for the caveatee at the close of the caveator's case.

*Judgment affirmed, the costs to be paid by the appellant.*