# CECIL M. WIMMER *v.* ANNIE LOUISE WIMMER

[No. 56, September Term, 1979.]

*Decided June 4, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Henry A. Babcock* for appellant.

*Arnold D. Bruckner* for appellee.

COLE, J., delivered the opinion of the Court.

We are asked to decide, under the circumstances of this case, whether a constructive trust may be impressed upon a one-half interest in real property which constituted the marital domicile of the parties, where the funds to purchase said property resulted solely from the husband's labors and where the wife's contribution to the marriage was solely that of a wife and mother.

Cecil and Annie Wimmer were married in 1940 and divorced in 1977. During their marriage Cecil was the breadwinner; Annie was the homemaker. He always worked; she never did except for a short period as a babysitter for her daughter. Cecil demonstrated unique business acumen in light of his 4th grade education; Annie, with a 7th grade education, could hardly read and write and depended upon Cecil and her children to explain simple business and financial matters.

Cecil was a carpenter by trade and specialized in buying, remodeling and selling old houses. In order to obtain the necessary funds to carry out his business, Cecil would oft times find it necessary to borrow money, securing the loans by mortgage notes. Although many of the properties were in his name only, Cecil frequently obtained his wife's signature on these notes.

The marital home which is the subject of this dispute was purchased by Cecil in 1968 or 1969 and titled in his name alone. Several years after purchasing this house, Cecil borrowed $22,400.00 and secured this loan by granting a mortgage on the house. Annie did not want to sign the mortgage note but Cecil twisted her arm and struck her on the back of the neck thereby forcing her to sign same.

On the trial Annie testified that during the marriage she thought the subject property had been titled in the joint names of the parties; however, the record does not reveal the basis for her conclusion. Annie also testified that Cecil had used the proceeds of the mortgage loan to purchase houses in his name alone; Cecil contended and produced documentary evidence to establish that the funds were used toward the purchase of property titled in both their names.

The parties separated in 1974. Annie, who remained in the marital home, assumed the mortgage payments but paid no rent to Cecil. The parties were divorced *a vinculo matrimonii* in 1977 and all questions relating to property remained unresolved. Thereafter, Annie filed a bill of complaint in the Circuit Court for Prince George's County against Cecil seeking to have the court impress a constructive trust on several properties titled in Cecil's name.[1] The circuit court dismissed the actions against all properties except the marital home upon which the court impressed a constructive trust as to one-half interest. The circuit court found that a confidential relationship existed between the parties and that Cecil was the dominant party. The court further found that Cecil failed to meet the burden imposed upon the dominant party of showing the fairness and reasonableness in the questioned transactions. The court concluded that:

> Mrs. Wimmer had a *marital interest* in the property, because of many factors, some of which

---

1. At the time the parties separated, Cecil owned seven rental properties and the home of the parties. Four of the properties were titled in their joint names; Annie filed suit to impress a trust on the four properties in his name alone.

are the fact that they had been married 37 years; that they raised a family; that her efforts had gone into maintenance of the family and education of the children, feeding, clothing and keeping the house clean, and while she worked only a minimal amount and what monies she did earn could not be traced directly to the purchase of 5007, that she, obviously, had a marital interest in it; and, consequently, the Court concludes that a constructive trust had been shown to exist, as far as that property is concerned. [emphasis added].

From this decree, Cecil appealed to the Court of Special Appeals. That court in an unreported opinion affirmed. *Cecil M. Wimmer v. Annie Louise Wimmer,* No. 993, September Term, 1978, filed May 10, 1979. We granted Cecil's petition for certiorari.

Before us Cecil concedes the existence of a confidential relationship, but contends that there is no evidence of fraud, undue influence, or unfair advantage by which he profited. With respect to the purchase of the marital home, Cecil notes that the dwelling was purchased with his own funds; that Annie suffered no loss; and that he did not profit from her. Regarding the encumbrance, Cecil asserts that there is no law to support a theory that because Annie unwillingly signed the mortgage note on his property, some legal right was created in the property to her benefit. In addition Cecil declares that because the proceeds of the loan transaction were used to purchase a property titled in both their names, Annie actually benefitted. Hence, there is no unjust enrichment.

Annie maintains that there was fraud involved here in Cecil's continuous representations over the years that he was putting all of the properties in both of their names. In addition, Annie contends that there is present in this case the potential for the unjust enrichment of Cecil and for her financial suffering. By signing the mortgage notes, she contends that she has subjected herself to the possibility of financial ruin. Finally, Annie asserts that a constructive

trust may be imposed purely on the basis of equity and that the facts here warrant such imposition.

Annie's theory finds support in some states which hold that upon granting a divorce, the chancellor has the power to make an equitable distribution of property without regard to title. *See* Freed and Foster, *Divorce in the Fifty States: An Overview as of August 1, 1978* [1978] 4 Fam. L. Rep. (BNA) 4033, 4037. However, this Court has repeatedly said that in the absence of statute the courts of this State are without power to transfer the property of either spouse to the other or to change the parties' rights or estates in that property, notwithstanding a wife's nonmonetary contributions to the marriage. *Bender v. Bender,* 282 Md. 525, 534, 386 A.2d 772 (1978);[2] *Gebhard v. Gebhard,* 253 Md. 125, 252 A.2d 171 (1969); *Lopez v. Lopez,* 206 Md. 509, 112 A.2d 466 (1955); *Dougherty v. Dougherty,* 187 Md. 21, 48 A.2d 451 (1946).

Despite the lack of power to transfer the ownership of property from one spouse to the other, a court will, given the proper circumstances, impose a constructive trust thereby transferring the beneficial or equitable interest to the deserving party. Having no claim to the legal title in the marital home, Annie has sought redress for the alleged misrepresentations of Cecil and compensation for her nonmonetary contributions to the marriage by requesting the imposition of a constructive trust in her favor.

In granting Annie's request for a constructive trust on the marital dwelling, the chancellor did not base his decision upon proof of wrongdoing by Cecil. Rather, he found that

---

**2.** The holding in Bender v. Bender, 282 Md. 525, 534, 386 A.2d 772 (1978) is not a departure from this rule. *Bender* merely raises a presumption to aid the court in determining the ownership of household goods and furnishings. There is no statutory authority permitting the court to determine the ownership of real property, (title apparently being dispositive in most cases). Similarly, Maryland's new property disposition statute, Maryland Code (1974, 1979 Supp.). §§ 3-6A-01 through 3-6A-07 of the Courts and Judicial Proceedings Article, does not permit the court to transfer the ownership of either real or personal property from one spouse to the other. §§ 3-6A-03 and 3-6A-04. The statute does however, permit the court to make an award of money in lieu thereof and to do so in accordance with the announced policy of the legislature which is to give careful consideration to both monetary and nonmonetary contributions by the spouses to the marriage. This statute is of no aid to Annie for it applies only to cases filed after January 1, 1979.

Cecil had failed to meet his burden of proving fairness in the context of a confidential realtionship with respect to property in which Annie had an interest — that interest being merely what the chancellor termed a "marital interest." It was apparently the chancellor's view that the court could base the imposition of a constructive trust upon a spouse's nonmonetary contributions to the marriage.

In determining whether the chancellor was correct in his conclusion, we shall decide whether the facts of this case relating to a mortgage transaction warrant the imposition of a constructive trust and whether the chancellor was correct in basing his decision in part on what he termed Annie's *marital interest* in Cecil's property.

A constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. The remedy is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it. *Bowie v. Ford,* 269 Md. 111, 304 A.2d 803 (1973); *O'Connor v. Estevez,* 182 Md. 541, 35 A.2d 148 (1943); *Springer v. Springer,* 144 Md. 465, 125 A. 162 (1924). The purpose of the remedy is to prevent the unjust enrichment of the holder of the property. *Siemiesz v. Amend,* 237 Md. 438, 206 A.2d 723 (1965).

In the ordinary case, there must be clear and convincing evidence not only of wrongdoing, but also of the circumstances which render it inequitable for the holder of the legal title to retain the beneficial interest. *Peninsula Meth. Homes v. Cropper,* 256 Md. 728, 261 A.2d 787 (1970). However, where a confidential relationship exists, the rules are somewhat different. In the context of the law of constructive trusts, a confidential relationship "exists where one party is under the domination of another, or where, under the circumstances, such party is justified in assuming that the other will not act in a manner inconsistent with his or her welfare." *Bass v. Smith,* 189 Md. 461, 469, 56 A.2d 800 (1948). A confidential relationship will not be presumed

from a marital relationship, but must be established by convincing evidence. *Fant v. Duffy,* 232 Md. 481, 192 A.2d 293 (1963); *Bell v. Bell,* 38 Md. App. 10, 379 A.2d 419 (1977). Once a confidential relationship is shown, a presumption arises that confidence was placed in the dominant party and that the transaction complained of resulted from fraud or undue influence and superiority or abuse of the confidential relationship by which the dominant party profited. *Wenger v. Rosinsky,* 232 Md. 43, 192 A.2d 82 (1963); 21 M.L.E. Trusts § 67 (1962). This presumption shifts the burden to the defendant to show the fairness and reasonableness of the transaction. *Sanders v. Sanders,* 261 Md. 268, 276, 274 A.2d 383 (1971). The defendant's evidence must be clear, satisfactory, and convincing to overcome the presumption. *Rice v. Rice,* 184 Md. 403, 411-12, 41 A.2d 371 (1945).

In those cases in which this Court has approved the imposition of a constructive trust there has been some transaction in which the alleged wrongdoer has acquired property in violation of some agreement or in which another person had some good equitable claim of entitlement to property resulting from the expenditure of funds or other detrimental reliance resulting in unjust enrichment.

For example, in *Springer v. Springer, supra,* a father negotiated for and purchased the property in question for the benefit of his family. Because the father was ill, legal title was placed in the name of a son with the understanding that the son would hold it for the benefit of the family. Having obtained the legal title, the son asserted that the property was purchased for him. This Court affirmed the imposition of a constructive trust on behalf of the father holding that where one violates a parol agreement to hold property for the benefit of another and the latter was under the circumstances justified in his belief that the former would carry out the agreement, such violation may be sufficient to raise a constructive trust in favor of the promisee. Like *Springer,* each of the following cases involved a breach of some parol agreement whereby one party acquired and then inequitably held property resulting in his unjust enrichment. *Dove v. White,* 211 Md. 228, 126 A.2d 835

(1956); *Carter v. Abramo,* 201 Md. 339, 93 A.2d 546 (1953); *Shives v. Borgman,* 194 Md. 29, 69 A.2d 802 (1949); *Long v. Huseman,* 186 Md. 495, 47 A.2d 75 (1946); *Trossbach v. Trossbach,* 185 Md. 47, 42 A.2d 905 (1945); *O'Connor v. Estevez, supra; Byer v. Szandrowski,* 160 Md. 212, 153 A. 49 (1931); *Dillfelder v. Winterling,* 150 Md. 626, 133 A. 825 (1926); *Jasinki v. Stankowski,* 145 Md. 58, 125 A. 684 (1924); *Ruhe v. Ruhe,* 113 Md. 595, 77 A. 797 (1910).

Unlike the above cases, *Wenger v. Rosinsky, supra,* did not involve a parol agreement. Here, the Court found that a landlady had failed to meet her burden of showing the fairness and reasonableness of the transaction where she had prevailed upon her boarder, a retired marine sergeant, to transfer most of his funds to her or for her benefit. In *Blondell v. Turover,* 195 Md. 251, 72 A.2d 697 (1950), the Court imposed a constructive trust on one who acquired property by purchasing it despite his knowledge that the sale was in breach of an option contract in favor of another. A more recent case was *Shaffer v. Lohr,* 264 Md. 397, 287 A.2d 42 (1972). There a daughter, at the death of her mother, took possession of funds in a savings account titled in both their names. Finding that the funds should have been part of the mother's estate, the Court impressed a constructive trust on behalf of the other daughter. The first daughter was said to have a duty to convey to prevent her own unjust enrichment.

In contrast to the cases cited above is *Wooddy v. Wooddy,* 258 Md. 224, 265 A.2d 467 (1970). A constructive trust was sought against a father's life insurance policies as a means of enforcing the father's legal obligation to pay for the education of his children. This Court held that a constructive trust was not a permissible remedy on these facts. The crucial language of the Court was the following:

> But the availability of this remedy is limited to instances where property is acquired by fraud, misrepresentation, duress, or under some other circumstance which makes it inequitable for the person holding title to retain it against another. *In*

> *the usual case, the person seeking to subject property to a constructive trust has at some time owned it, or had a valid claim to or against it.* Here, the insurance policies were solely Dr. Wooddy's, and the fact that he may at one time have designated the children as beneficiaries or intended the policies to be used for their education does not, standing alone, create rights which may be asserted by the children or in their behalf to require him to keep the policies in force or to prevent him from changing the beneficiary he had designated. [258 Md. at 233 (emphasis added)].

Clearly then in most cases, unless there is an acquisition of property in which another has some good equitable claim, no constructive trust may be imposed. A rule without such limitations would permit the courts to *effectively* transfer property as a means of attempting to right every wrong. The courts' equitable powers are not so broad.

Applying these principles to the facts of this case compels the conclusion that this is not a proper case for the imposition of a constructive trust. While the parties agree that there is a confidential relationship and that Cecil is the dominant party, unless there was some *transaction* by which Cecil acquired some property in which Annie has some bona fide equitable claim, then the trial court erred in shifting the burden to Cecil to prove the fairness and reasonableness of his actions. We are unable to say that this case clearly involves any transaction cognizable for purposes of the law of constructive trusts. With respect to the purchase of the marital home, despite Annie's assertions to the contrary, there is no evidence in the record of any misrepresentations by Cecil as to the title of the property. There are no facts sufficient to explain the basis for Annie's belief or understanding that the property was titled in both names.[3]

---

3. Annie would also have us consider her assumption of the mortgage payments as evidence that there was an understanding that she would have an interest in the house. Ordinarily, a constructive trust must be established from circumstances surrounding the inception of the transaction and not from subsequent events. Annapolis v. W. Anna. Fire &

Moreover, even if there had been a misrepresentation to that effect by Cecil, there was no detrimental reliance by Annie. She neither transferred any funds nor parted with any other property in reliance thereon. In addition, as the house was purchased with Cecil's funds, missing is the indispensable element of unjust enrichment.

Nor do the circumstances surrounding the obtainment of the mortgage amount to a transaction cognizable for purposes of applying the law of constructive trusts. Annie can point to no property in which she had a claim which Cecil acquired as a result of obtaining the mortgage. While it may be argued that Cecil's reprehensible conduct in inducing Annie to sign the mortgage note resulted in her incurring a liability through his abuse of a confidential relationship and, even if it could be said that such facts constituted the kind of *transaction* which could potentially support the imposition of a constructive trust, Annie would not be entitled to relief. Again missing is the requisite element of unjust enrichment. In fact, it appears that Annie benefitted by the transaction. The conclusion, we infer from the findings of fact by the chancellor, was that the proceeds of the loan were used to purchase property, the title to which was placed in both their names. Annie, therefore, profited by the transactions.

The weakness in Annie's position and the error of the courts below can be illuminated by a comparison with cases from other jurisdictions in which courts have imposed a constructive trust in the marital abode. A very recent case is *Tomaino v. Tomaino*, 68 App. Div. 2d 267, 416 N.Y.S.2d 925 (1979), where the husband misled his wife by informing her that there was no need for her name to be on the deed because New York was a community property state. He also induced her to transfer money to him for improvements on

Imp. Co., 264 Md. 729, 737, 288 A.2d 151 (1972). Subsequent conduct is only relevant to the extent that it reflects upon the intention or purpose of the person sought to be charged at the time the transaction was consummated. Corbett v. Hospelhorn, 172 Md. 257, 191 A. 691 (1937). Annie's assumption of the mortgage does little to support her theory that the parties intended the property to be jointly owned particularly in light of the fact that the assumption appears to be in lieu of rental payments to Cecil.

the property. Finding that a statement had been made in the context of a confidential relationship upon which the wife relied and the transfer of funds resulting in the husband's unjust enrichment, the court applied a constructive trust.

In *Genter v. Genter,* 270 So. 2d 388 (Fla. Dist. Ct. App. 1972), the parties, prior to their marriage, borrowed money from the wife's grandmother which was used toward the downpayment on a home. Although the home was placed in the husband's name, there was an understanding that the wife could have an interest in it. In addition, the wife often worked in the husband's business without pay. The court found that the transfer of funds combined with the express parol agreement and unjust enrichment warranted the imposition of a constructive trust.

Although it involved the marital farm as well as the house, *Cline v. Cline,* 297 N.C. 336, 255 S.E.2d 399 (1979), is also instructive. After representing to his wife that the farm would be held jointly and that the obligation to pay off the mortgage would be their joint liability, the husband took title in his own name. The court found that in accordance with the understanding, the wife contributed money and labor in an amount equal to one-half the value of the mortgage. It therefore imposed a constructive trust.

All three of the above cases clearly involve factors not present in this case. Stripped of the elements of wrongdoing, property transfer, and tangible unjust enrichment, Annie's claim is reduced to her contention that she is entitled to part of Cecil's property merely by virtue of their marriage. This according to her own testimony was the real basis of her case:

Q. So when Cecil purchased these houses in his own name, you were no worse off than you were before. Had you suffered anything by his buying the houses in his own name?

* * *

A. I don't think I suffered, but I feel that I am entitled to what belongs to him.

While the imposition of a constructive trust is a remedy which may be applied to correct a broad spectrum of inequitable conduct, it is not however, a remedy for every moral wrong arising in societal affairs. A court of equity will not deprive one person of property titled in his name and give it to another merely because the latter believes herself to be deserving of it. We hold that the relationship of husband and wife, in and of itself, gives rise to no marital interest in the property of one spouse as against the other and is inadequate to support the imposition of a constructive trust.

The chancellor's imposition of a constructive trust in the case at bar was erroneous and we, therefore, reverse.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reverse the judgment of the Circuit Court for Prince George's County; appellee to pay the costs.*