881 F.2d 1069
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lottie BURKE, and her guardian, Arthur Drager, Plaintiffs-Appellees,
and
The BANK OF BALTIMORE, Plaintiff,
v.
Mary B. KRIEG, Defendant-Appellant.
 No. 88-2193.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1989.
Decided July 20, 1989.
 
 Richard Charles Daniels (Daniels & Daniels on brief) for appellant.
 Howard J. Schulman for appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge and JOSEPH H. YOUNG, Senior District Judge for the District of Maryland sitting by designation.
 PER CURIAM:
 
 
 1
 In this diversity action, defendant Mary B. Krieg appeals from an order of the district court awarding funds on deposit at the Bank of Baltimore (Bank) to plaintiff Lottie Burke. Finding no error, we affirm.
 
 I.
 
 2
 This is an unfortunate dispute between two sisters, one an adjudicated incompetent. In November, 1977, plaintiff Lottie Burke opened two accounts in her own name at the Bank. As the years passed, Burke's health deteriorated, and in June, 1984, she was diagnosed as suffering from dementia, more commonly known as senility.
 
 
 3
 Burke's mental capacity was greatly diminished as a result of her condition. Three witnesses--Burke's physician, Dr. Sandra Howard, and two Baltimore City social workers--testified that by 1985 Burke was so disoriented and confused that she could no longer take care of herself. She wandered in the streets partially clothed and was escorted home by neighbors. She was incontinent and had stopped bathing regularly. Although her sister-in-law offered some assistance, Burke's home was littered with dirty dishes and soiled underwear. In November, 1985, a psychiatrist concluded that Burke's condition was permanent.
 
 
 4
 In February, 1986, another Baltimore City social worker, Brenda Jews, visited Burke. Jews found that Burke was disoriented and concluded that guardians should be appointed for her person and property. Burke was adjudicated an incompetent in October, 1986, and in December, 1986, she was committed to an adult foster care home, where she remains today.
 
 
 5
 Until April 18, 1986, Burke had maintained her accounts at the Bank in her name. On that date Burke's sister, defendant Mary B. Krieg, obtained Burke's signature on letters authorizing the transfer of funds in these accounts to joint savings accounts with Krieg. The letters were notarized by an attorney, Arnold Kaplan, who spoke with Burke for five minutes at most. At trial, Kaplan could not remember what Burke had said, but reasoned that she "must have" indicated that she understood what she was signing. On that same day, however, Jews visited Burke's home and found that Burke was still confused and deluded.
 
 
 6
 On August 11, 1986, Krieg closed the two joint accounts and placed the funds, then totaling roughly $114,000, into two new accounts titled in her name alone. Subsequently, Burke's court-appointed guardian, Arthur L. Drager, claimed the proceeds of Burke's earlier accounts on her behalf. The Bank brought an interpleader action in Maryland state court, and Krieg removed to the district court on the basis of diversity of citizenship of the parties.[1] In a bench trial, the district court found that Burke was mentally incompetent on the date that she transferred her funds into the joint accounts with Krieg, and that no joint tenancy had been created under Maryland law. The court ordered the Bank to transfer the funds from Krieg's accounts to Burke's guardian. In denying a motion by Krieg to amend the judgment under Fed.R.Civ.P. 59(e), the district court also refused to impose a constructive trust in favor of Krieg on one-half of the funds in the accounts in question.
 
 II.
 
 7
 We have no difficulty affirming the judgment of the district court. Krieg's first contention is that the district court was incorrect in concluding that Burke was mentally incompetent on April 18, 1986, the date she transferred her money into the joint accounts with Krieg. Of course, the district court's finding in this regard is one of fact, which can be set aside only if clearly erroneous. Fed.R.Civ.P. 52(a).
 
 
 8
 Under Maryland law, there is a presumption that every person is sane and possesses the mental capacity to execute an instrument, and the burden of proving the contrary rests with the party alleging a lack of mental capacity. Jackson v. Jackson, 249 Md. 170, ----, 238 A.2d 852, 855 (1968); Piraino v. Betka, 218 Md. 548, ---- 147 A.2d 712, 716 (1959); Gordon v. Rawles, 201 Md. 503, ----, 94 A.2d 465, 469-70 (1953). The evidence of a person's lack of capacity "must be directed to the date of the execution of the paper attacked, and must tend to show that he was incompetent at that particular time." Gordon, 201 Md. at ----, 94 A.2d at 470. Here, Burke certainly produced enough evidence to overcome the presumption of sanity. Indeed, we cannot imagine what more the district court could have required of her. The evidence of Burke's incompetence on April 18, 1986 is overwhelming, and the district court did not clearly err in holding that she lacked the mental capacity to execute a transfer of funds on that date.
 
 
 9
 We also reject Krieg's alternative contention that the district court should have imposed a constructive trust in Krieg's favor in half of the money in Burke's accounts.[2] Krieg asserts that she and Burke had an oral agreement that the money, although titled in Burke's name alone, really belonged in equal shares to each of them, since it had been left them jointly by an aunt.
 
 
 10
 Under Maryland law, a constructive trust is an equitable remedy "employed by a court ... to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." Wimmer v. Wimmer, 287 Md. 663, ----, 414 A.2d 1254, 1258 (1980). For a court to impose a constructive trust, whether the parties are strangers or stand in a confidential relationship to one another, there generally must have been "some transaction in which the alleged wrongdoer has acquired property in violation of some agreement" between the parties. Id. at ----, 414 A.2d at 1258.[3] "Ordinarily, a constructive trust must be established from circumstances surrounding the inception of the transaction and not from subsequent events." Id. at ---- n. 3, 414 A.2d at 1260 n. 3. Nevertheless, subsequent conduct is "relevant to the extent that it reflects upon the intention or purpose of the person sought to be charged at the time the transaction was consummated." Id. at ---- n. 3, 414 A.2d at 1260 n. 3.
 
 
 11
 In this case, there was simply no evidence, other than Krieg's testimony, of any agreement between the sisters to share the money equally. Krieg's testimony was hardly credible, given her claim at trial that she was entitled to all the money in Burke's accounts, not merely half. Indeed, Krieg did not raise the constructive trust issue until after the district court had rejected her claim to all the money. Moreover, there was evidence that both parties had come to treat the funds in Burke's accounts as belonging solely to her.
 
 
 12
 For the reasons stated, the judgment is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The district court subsequently dismissed the Bank as a party
 
 
 [2]
 Krieg has made a third argument to us as well. She contends that the district court committed reversible error by admitting, over her objection, the testimony of the two social workers who visited Burke's home in 1985 and Dr. Howard's hospital records. Because Burke did not identify these witnesses or the records in her initial responses to Krieg's interrogatories, Krieg asserts, Burke had the obligation under Fed.R.Civ.P. 26(e) seasonably to supplement her answers. Of course, a district court has wide discretion in determining whether and how to enforce the duty imposed by Rule 26(e); "[b]ecause it has power to impose a sanction does not mean it is required to do so." 8 Wright & Miller, Federal Practice and Procedure: Civil Sec. 2050 at 327 (1970 & Supp.1988). Suffice it to say that in this case we do not think the district court abused its discretion in admitting the evidence in question. The disclosure of the identities of these witnesses before trial provided Krieg's lawyer with adequate time to discover the nature of their testimony prior to trial, if he had decided to do so
 
 
 [3]
 The Wimmer court also stated that the imposition of a constructive trust would be proper where there has been a transaction "in which another person had some good equitable claim of entitlement to property resulting from the expenditure of funds or other detrimental reliance resulting in unjust enrichment." Wimmer, 287 Md. at ----, 414 A.2d at 1258